[No. 7582.]

COMSTOCK, STATE ENGINEER, ET AL. v. LARIMER & WELD
RESERVOIR COMPANY.

1. PLEADINGS—*Construed.* The complaint, of a reservoir com-
pany, filed in October, set forth that plaintiff was entitled by certain
adjudication decrees to divert water from the Cache la Poudre River,
in Water District No. 3, for storage; that large volumes of water were
passing the head-gate of its inlet canal; that the water was not needed
for direct irrigation, either in District No. 3 or elsewhere; but that
the official defendants, the State Engineer, the Division Engineer,
and the Water Commissioner, under an order of the Division Engin-
eer promulgated in the preceding May and reiterated on the first of
September, were refusing to permit plaintiff to divert water from the
stream for storage; that in Water District No. 3, for more than twenty
years, the use of water for direct irrigation terminated about the
15th of September in each year, and all rights of appropriators for
any purpose other than storage ceased and determined at the date
named, until the following April; that the acts of the defendants
were unlawful, unwarranted, and in violation of plaintiff's decreed
rights; that the order complained of was uncalled for, and an assump-
tion on the part of defendant officials, of an authority not conferred
upon them by law, and· that the use of water contemplated by the
order would be mere waste, and contrary to law; praying an injunc-
tion to restrain these officials from enforcing the order in question,
and for a decree that in Water District No. 3 the period for direct
irrigation commences upon April 15th in each year, and extends to
September 15th, and the period for storage of water commences on

the 15th of September in each year, extending to April 15th of the following year. *Held* that the object of the action was to obtain the relief demanded by the special prayer, and not to suppress waste or promote economy in the use of water. *Held* further that the complaint failed to show, by any averment of fact that the water officials were acting beyond or contrary to the authority conferred upon them by law, or that the plaintiffs had any right superior to that of the appropriators for direct irrigation, in the same district. (189, 190, 192, 197, 205)

2. ——*Complaint in Controversies as to the Use of Water.* Where one claiming the right to water for storage seeks to restrain its application to direct irrigation it is not sufficient to aver merely an appropriation for storage, and a decree establishing the right. The complaint must go further and show that the plaintiff's right is relatively prior to that asserted by those against whom the relief is sought. (197)

3. Parties—*In Equity—Indispensable.* Plaintiff claiming to be entitled to the waters of a certain stream, for storage, between certain dates, brought an action to restrain the officials of the water service from enforcing an order of the Division Engineer which required the Water Commissioner of the district to cease the storing of water, during the same period. *Held* that the appropriators for direct irrigation in other districts of the division would, of necessity, be affected by the decree and were indispensable parties. (193, 194)

4. Irrigation—*Irrigating and Non-Irrigating Seasons.* The division of the year into two distinct seasons, during one of which the waters of a certain district are to be used for direct irrigation, and during the other of which they are to be stored, is in conflict with statutory provisions regulating the distribution of water, and with the thoroughly established doctrine that preference to the use of water depends upon prior appropriation, and the necessities of the consumer. (195)

Where decrees have established the right and priority of appropriators for irrigation, or other purpose, without limitation as to the time of use, the courts have no power to invade the right so conferred, by prescribing times and seasons during which it shall be enjoyed.

The inconveniences, difficulties and controversies which must result from any such division the year, enlarged upon. (203, 204)

5. ——*Distribution of Water*, is to be made throughout the irrigation division, according to priorities, and not for a single district. (194)

6. ——*Waste in the Use of Water*, is to be restrained by proceedings against the offending parties only. (205)

7. ——*The Right to the Use of Water*, depends upon the needs

of the appropriator. He is not permitted to apply water to his land unnecessarily, or in such volume as to amount to waste.

In this respect the law makes no distinction between appropriators for irrigation, for domestic use, or for power. As to all these purposes, where a valid appropriation is made, the right is limited only by the law of necessity. (203, 204)

8. CUSTOM—*Unlawful.* A custom established in a particular water district, that water shall be employed for direct irrigation only during a particular season of the year is contrary to statute and binds neither the water officials nor consumers from the same stream in other districts. (200)

*Error to Larimer District Court.*—Hon. HARRY P. GAMBLE, Judge.

Mr. JAMES W. McCREERY, Mr. DONALD C. McCREERY, Mr. L. C. STEPHENSON, Mr. STOTEN R. STEPHENSON, for plaintiffs in error.

Mr. L. R. RHODES, Mr. R. W. FLEMING, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The Larimer and Weld Reservoir Company, a corporation, defendant in error here, plaintiff below, on October 26, 1910, filed its complaint against the State Engineer, the Division Engineer of Water Division No. 1, and the Water Commissioner of Water District No. 3. Later, after sundry preliminary steps, an amended complaint was filed, setting forth the right of plaintiff to divert water for storage purposes from the Cache la Poudre river, under an appropriation dated the 3rd day of June, 1890, for 225,000,000 cubic feet of water, and one of date the 1st day of April, 1895, for an additional 100,000,000 cubic feet of water, decreed October 28, 1909, in Water District No. 3, by the Larimer County District

Court; that at the time of filing the complaint large quantities of water were passing the headgate of its inlet canal; that no requirement existed for the use of this water for direct irrigation, either in Water District 3 or elsewhere; that plaintiff was entitled to store such water under its appropriation, in its reservoir; that the official defendants arbitrarily refused to allow it to do so. It was further alleged in the complaint "that in Water District 3 there are, and for more than twenty years have been, two well defined and recognized periods of time each year for the use of water flowing in the Cache la Poudre river and its tributaries; * * * that the use of water for direct irrigation commences on or about the 15th day of April of each year and terminates on or about the 15th day of September of each year, and from the 15th day of September of each year until the 15th day of April of the following year the water of said river and its tributaries can only be used economically for storage; * * * that for more than twenty years preceding the commencement of this action, the waters of said river and its tributaries have been, by common consent, so used; that all rights of appropriation of any of said waters for any purposes other than for storage, ceased and determined on the 15th day of September, 1910; and that such other rights have not been, and will not be, in force and effect until the waters of said river and its tributaries are needed and required to irrigate crops planted and growing during the coming season of 1911."

It was further alleged: "That on May 28, 1910, Division Engineer Cogswell issued an order to J. L. Armstrong, Water Commissioner for Water District No. 3, as follows: 'Water is needed for direct irrigation in districts numbered 8, 2, 1 and 64; you are hereby ordered to cease all storing of water in your district until further

notice from this office. Water must not be wasted into reservoirs at the lower end of ditch when the reservoir is not entitled to storage water, but the excess water should be shut off the ditch at the headgate. In case of heavy rains or floods report to this office immediately by phone at my expense.' "

The complaint further states, in effect, that this order was renewed on the 1st day of September, 1910, and was then in full force and effect; that at no time covered by said order was there any demand in said district for such order, or for the delivery of water, but that such order was uncalled for and was an assumption of authority and power on the part of said defendants; that if there is any person, company or association making any claim or demand whatever for water for direct irrigation, such claim and demand is illegal and unjust; that since the 15th day of September, 1910, there has been, and until the 15th day of April, 1911, there will be, no need or demand for water for direct irrigation in either Water District No. 1 or 64, and that any such use of such water would be wasteful and not an economical or beneficial use, and would be contrary to law.

The complaint concludes with a prayer for a perpetual injunction against the official defendants and their successors in office, restraining them from enforcing the order complained of, and also for a decree to the effect that in Water District No. 3, the Cache la Poudre river and its tributaries, the direct or immediate irrigation period commences on the 15th day of April of each year, and extends to the 15th day of September of each year, and that the storage season therein commences September 15th of each year, and ends April 15th of the succeeding year.

The original defendants, the water officials, answered, alleging that they are public officers charged

with the distribution of water of the public streams, according to the order of priority as fixed by judicial decrees; that in the exercise of their official duty they had conformed, as advised, to the law in all respects without favor or discrimination; that the Division Engineer had made the order set forth in the complaint; that said order was in full force and effect, but subject at all times to change and modification when advised that the flow of water in the streams would permit storage, and that they, and neither of them, were parties in interest in the proceedings, were neither owners nor appropriators of water of the streams, but were acting solely in the exercise of the police power conferred by statute in that behalf, and pursuant to previous orders of the court; that appropriators of water for direct irrigation in Water Districts 1 and 64 were claiming and demanding the right to use the water in the South Platte river, under and by virtue of their several prior appropriations. All other averments of the complaint were denied on information and belief.

The plaintiffs in error here, who are direct irrigators, made defendants by order of court, filed answer to the amended complaint, setting up several defenses: First. That their rights as appropriators of water from the Platte river in Water District No. 1 are superior in point of time and use to the appropriation of the plaintiff for storage purposes; their present needs of the same for direct irrigation; their use and enjoyment of water under and pursuant to their several decrees, and admitting the issuance of the order complained of, as set forth in the complaint; they denied the alleged superior rights of plaintiff, and also the existence of a custom or law fixing a storage season anywhere, as against a diversion of water by prior appropriators for beneficial uses; Second. That the amended complaint does not state facts

sufficient to constitute a cause of action, or show the priority of the appropriation claimed and set forth by plaintiff, or the appropriators of the several answering defendants, and also that the court was without jurisdiction to proceed to the determination of the cause, because the appropriators of water for direct irrigation in the several other water districts of that division are not joined as defendants, being necessary and indispensable parties; and, Third. For an affirmative answer and defense, that they are direct irrigators in Water District No. 1, from the Platte river, setting forth fully and specifically their rights and dates of decreed appropriation, and the use of all water that could be obtained under their several appropriations, at all seasons of the year, for direct and beneficial use in the irrigation of their lands and crops, and that they had been in such enjoyment and use of their respective appropriations and rights ever since their said several appropriations were made and decreed. By replication issue was joined upon all new matter set up in the answer.

A careful analysis of the allegations of the complaint leads to the irresistible conclusion that the real object of the action was to have the court enter a decree dividing the year into two seasons, one for direct irrigation, and the other for the storage of water, and the court gave relief substantially as prayed. The effect of the decree was to declare and fix, in the territory involved, the season in which direct irrigation, so called, might be practiced, and the season, or portion of the year, when waters flowing in the natural streams must be wholly surrendered by direct irrigators, to storage purposes. In short, the suit was a proceeding to compel by injunction the official defendants to furnish water for storage, regardless of the priorities or actual necessities of appropriators for direct irrigation, on the ground that

in any event, all right to the distribution of water for direct irrigation ceases during the period from the 15th day of September of each year to the 15th day of April next thereafter. Upon a full consideration of the averments of the complaint it is impossible to reach any other conclusion than that this was not only the primary, but the sole object of the action.

The sufficiency of the amended complaint was challenged on the grounds: First. That necessary and indispensable parties were not joined as defendants; Second. That no facts were pleaded by which it was made to appear that the official defendants were acting in excess of the authority conferred upon them by law; and, Third. That no facts were pleaded from which it appeared that the priority of appropriation claimed by plaintiff was prior to or dominated the rights of plaintiffs in error and other appropriators of water for beneficial uses within Water District No. 1, and in other water districts embraced in Water Division No. 1.

Since, as we have seen, the prime object of the action was to obtain a decree of court, dividing the year into irrigating and non-irrigating seasons, designating the season in which direct irrigation, so called, might be practiced, and the season or portion of the year when the waters flowing in the stream must be surrendered to storage purposes, and which during that time could only be diverted and employed for the latter purpose, it is manifest that all appropriators of water for direct irrigation from the South Platte river water-shed forming a portion of Water Division No. 1, embracing Water Districts No's 1, 2, 3, 4, 5, 6, 7, 8, 23 and 64, would of necessity be affected by any such decree; indeed, the effect of the finding and judgment of the court was to declare that direct irrigation in that water division could not, during the period from the 1st day of October of each year to the

15th day of April of each succeeding year, be lawfully carried on, and to permanently deny that such right existed during such period. If direct irrigators in Water Districts 1 and 64 were necessary and indispensable parties as held by the trial court, upon like reasoning it follows that all other direct irrigators in the division, especially those with senior rights to those of the plaintiff, were equally interested in the subject and object of the action and likewise necessary and indispensable parties.

Under statutory provisions, and the decisions of this court, the river with its tributaries must be administered by the water officials as a whole, and all the decrees and appropriations of the water division of which Water District 3 is a part, collated, tabulated and combined for the purposes of such administration according to priorities. It follows that all priorities of appropriation for direct irrigation in the several districts comprising that division would necessarily be affected by the proposed decree, for it prescribes new methods and new rules, binding upon water officials, for the distribution of water throughout such division, methods and regulations totally different from those prescribed by law, under which the water officials, the original defendants herein, had theretofore acted in such distribution between the several and respective appropriators and users of water, for beneficial purposes in that drainage. The water officials are nominal parties only. The broad and sweeping relief asked, if competent at all, clearly could be awarded only against actual appropriators and users of water for direct irrigation in the division, as they were the real parties in interest. They alone were interested in the subject-matter of the suit and its object; the proposed decree would materially affect their rights. They were, therefore, not only proper, but necessary parties, and without having them before the court no binding or

effective decree, such as was sought and in fact rendered, can be upheld. In *McLean v. Farmers' H. L. C. & R. Co.*, 44 Colo. 184, 194, 98 Pac. 16, 19, speaking to a proposition closely akin to the one now being considered, the court, at page 194, said:

"The relief demanded by the complaint could not be granted against the water officials without prejudice to the rights of these consumers; neither could their rights be saved in their absence, for the obvious reason that they were the parties who would be directly affected by the judgment demanded. * * * Necessary parties are all who have an interest in the subject and object of the action, and all persons against whom relief must be obtained in order to accomplish the object of the suit."

It is obvious that a division of the year into two separate and distinct seasons, during one of which water is to be stored and during the other to be used for direct irrigation, which is plainly in conflict with statutory provisions providing for the distribution of water, materially changes the situation of direct irrigators throughout the whole division, and could not therefore be properly decreed in any event, without giving all persons so interested and affected opportunity to be heard. The objection, therefore, that necessary and indispensable parties had not been brought in was sound, and the court ought not to have proceeded without having all such parties before it.

The objection that the complaint sets forth no facts showing or tending to show that the water officials were acting contrary to law was also good. The allegations of the complaint as to the water officials in this respect are substantially as follows:

"That said defendants Cogswell, Comstock and Armstrong refused and still refuse to allow this plaintiff to receive from the said river and its tributaries said

water, and plaintiff states that the acts of said defendants and their refusal to allow plaintiff to receive such waters through the headgate of its inlet canal for storage are unwarranted, illegal and in violation of plaintiff's decreed rights.''

In paragraph 20 of the complaint the plaintiff sets out the order of the Division Engineer complained of, and concludes that paragraph in the following language:

''That such order was uncalled for, and the assumption of a power and authority on the part of said defendants, Cogswell and Comstock, that they as public officials, have no legal authority to assume or make; that it was an assumption of power and authority not conferred in any manner upon them, by or under the laws and statutes of this state.''

This order shows upon its face that it was made in precise accord with the police statutes of the state, governing the method of distribution of water between various appropriators, in the discharge of their public duties in the distribution of water to ditches and consumers according to their respective rights and priorities. In *McLean v. Farmers' H. L. C. & R. Co.*, *supra,* speaking to this point it is said:

''By section 2448, 1 Mills' Statutes, it is made the duty of the superintendent of irrigation to distribute the waters in his division in accordance with the rights of priority of appropriation as established by the judicial decrees entered in the several water districts included in such division, and that he shall have general control over the water commissioners of the districts embraced in his division. The several decrees of the water districts within a water division are to be treated as one, and the water distributed accordingly. * * * It is charged, however, that the acts of the defendants in closing down plaintiffs' headgates were wholly unauthorized,

illegal and unlawful. * * * This statement does not aid the complaint, because it is but a statement of a mere legal conclusion without any statement of facts upon which to base it. * * * In short, none of the averments of the complaint to which we have referred, nor all taken together, state any cause of action against the defendant water officials, for the reason that it appears that they were only acting in their official capacity, and no facts are pleaded from which it is made to appear that they were acting in excess of the authority conferred upon them by law.''

That is precisely the situation which confronts the court in this case. The complaint is barren of facts which in any way show that the water officials were acting beyond, or contrary to, the authority conferred upon them by law. From anything that is made to appear by the averments of the complaint, they were clearly acting within their power and doing only that which the law enjoined upon them, as such officials, to do.

It is further urged against the complaint that it does not state facts sufficient to state a cause of action against the direct irrigators who were made defendants in the suit. It was incumbent upon the plaintiff in this connection to show affirmatively by proper allegations that it had a superior right to these defendants to divert the water of the Cache la Poudre river for storage during the period named. It is not sufficient in a case of this kind for the plaintiff to show that it has made an appropriation of water for storage and has obtained a decree therefor. It must go further and show that the right so decreed is relatively prior to that claimed by the parties in interest against whom relief is sought. In other words, the plaintiff should have shown by the averments of its complaint, in order to state a cause of action, that its alleged rights dominated the rights of the direct

irrigators whose right of use it undertook to have denied. Since the complaint failed to do this, it is in that respect insufficient.

The supposed cause of action is based upon the proposition that on the 15th day of September of each year the season for direct irrigation ends, and that none of the defendant appropriators of water for direct irrigation could, after that date, nor until the 15th day of April of the following year, as against one claiming water for storage, although junior in point of time, lawfully divert water to be applied to the direct irrigation of land or crops. This proposition is fundamentally wrong, and is in conflict with the provisions of our constitution to the effect that the water of every natural stream not heretofore appropriated within the State of Colorado is declared to be the property of the public, and the same is dedicated to the use of the people of the State, subject to appropriation as hereinafter provided; that the right to divert the unappropriated water of any natural stream to beneficial uses shall never be denied, and that priority of appropriation shall give the better right as between those using water for the same purpose. Plaintiff, by the averments of its complaint, relies for relief upon the bare fact that the defendants, who are direct irrigators, are, as matter of law, limited to the diversion and use of water to the period from April 15th to September 15th of each year, without reference to the date of their several priorities, and that, as is alleged, any use of water for direct irrigation by them outside of this period is an unlawful use, which interferes with the right of plaintiff. It is solely because of such supposed limitation upon the right of use by the defendants, direct irrigators, that plaintiff claims its appropriations are superior to theirs. These allegations, since only conclusions of law, based upon and following

false and erroneous assumptions, are stated, are insufficient to make out a cause of action against the defendants, who are direct irrigators. In order to entitle an appropriator of water to maintain an equitable action against the use of water by another appropriator, it must be shown by allegations of fact that the one seeking such relief has a dominant and superior right, both in point of time and necessity of use. Nothing of this sort is made to appear in the complaint, but by necessary inference and implication the very opposite is shown.

In *Carroll v. Vance*, 39 Colo. 216, 88 Pac. 1069, upon the question of the sufficiency of the complaint to entitle one appropriator to restrain an alleged unlawful diversion of water by another, this was declared.

"A complaint, in an action by a senior appropriator to restrain an unlawful diversion of water, which merely alleges that plaintiff has a priority superior to that of the defendant, with which the defendant is interfering, is but a mere conclusion of law, and is not a sufficient statement of ultimate facts constituting a prior appropriation, but it is necessary to state the facts which show such appropriation and its priority."

In *McLean v. Farmers' H. L. C. & R. Co., supra,* it was said:

"The object of the action was to prevent these officers from causing water to flow down the stream for the use of appropriators in District No. 2, and in order to effect this and it was necessary that the rights of plaintiffs to the subject-matter of controversy be adjudged superior to those of these appropriators."

Surely unless facts are set forth in the complaint which show such superiority of right no cause of action is stated, and in the absence of such averments no superiority of right could be adjudged.

Beginning with the first application of water in Col-

orado to beneficial uses, the right of preference to such use between respective claimants has been made to depend upon prior appropriation and necessity of use. This doctrine has become thoroughly entrenched in our jurisprudence, through constitutional and statutory provisions, and by a uniform and unbroken line of judicial decisions. The complaint is framed upon a theory in direct conflict with this well settled doctrine, and to hold that it states a cause of action would completely overturn and nullify this primary and fundamental rule.

The further allegations in the complaint to the effect that for more than twenty years preceding the commencement of this action, in Water District No. 3, the waters of the Cache la Poudre and its tributaries have by common consent of the water appropriators therein been used and employed for direct irrigation during the period from the 15th day of April of each year to the 15th day of September of each year, and that from the 15th day of September of each year to the 15th day of April of the following year these waters have been given over to storage, are relied upon to constitute a cause of action. If it be true that such custom and usage has thus prevailed in this particular water district, it is directly contrary to the statute, and cannot therefore be established for any purpose. 12 Cyc. 1054; *Bacey v. Gallagher,* 20 Wall. 670, 22 L. Ed. 452. Furthermore, the Cache la Poudre river, which comprises Water District 3 of Water Division 1, is a tributary of the South Platte, and its waters are waters of the South Platte, and they can no more be interfered with adversely to the rights of other consumers in the several other districts in that division, by junior reservoir appropriators, than can the waters of the South Platte proper, immediately adjacent to their headgates. And even if the custom and usage alleged were fully and satisfactorily established by com-

petent proof, it would not bind either the water officials, or consumers of water from the same streams in the several other districts of the same water division.

In *McLean v. Farmers' H. L. C. & R. Co., supra,* it was said:

"With priorities settled it became necessary to appoint officials whose duty it is to distribute the waters of a stream according to the decreed priorities therein. Their functions and authority cannot be interfered with without ignoring adjudication decrees, and the statutes relating to the distribution of water thereunder, which would bring about the conditions that existed prior to the time when we had any statutes on the subject relating to the adjudication of rights to the use of water or its distribution by officials in accordance with such adjudication. The laws of the state providing for officials to distribute the waters of our streams for agricultural uses according to adjudicated priorities were passed for the purpose of securing an orderly distribution of such waters, and to prevent breaches of the peace which would inevitably ensue if the owners of priorities were permitted to divert and divide the waters of our streams according to their ideas of their adjudicated rights and needs. These laws must be strictly enforced and observed, and the courts have no power to annul them."

In *Larimer & Weld Reservoir Co. v. Water Supply & Storage Co.,* 25 Colo. 87, it was held in substance and effect that the tributary from which a junior appropriator takes must first answer to a senior appropriator from the main stream. In *McLean v. Farmers' H. L. C. & R. Co., supra,* on authority of *Lower Latham Ditch Co. v. Louden Canal & Reservoir Co.,* 27 Colo. 287, 60 Pac. 629, 83 Am. St. 80, speaking to this point, it was said:

"The several decrees of the water district within a water division are to be treated as one and the water

·distributed among them. It is the duty of the superintendent of a water division to make such distribution by direction to the water commissioners under his control.''

The foregoing states the lawful method by which water is to be distributed to users throughout a division, that is according to priorities, not for a single water district, but for the entire drainage, as the statute provides. Priorities are not to be administered by regulations resting on custom, use or agreement between irrigators of a particular district, where their enforcement would interfere with the rights of other users in other water districts of the same division. That is, users and consumers of water for irrigation in one district cannot make and apply regulations in the administration of their priorities according to their own interpretation of them, and to meet their needs as they think they should be met; but the waters of a division must be distributed to all consumers under the uniform rule provided by law.

The demurrer to the complaint on the ground that facts sufficient to constitute a cause of action against the defendants, who are direct irrigators, are not stated, should therefore have been sustained.

It follows from what has already been said that the judgment under consideration must be reversed, but as the case was tried upon its merits it is not only proper, but to the interest of all parties that we express ourselves more fully and directly upon the main features of the case.

From the evidence, and the record as a whole, it is disclosed that the decrees of the defendants, direct irrigators in Water District 1, were and are prior in time and use to that of the plaintiff, and that such decrees are without limitation as to time of use. The question being one of necessity of use, the matter of season alone cannot be controlling. While that may be a factor bearing upon

such necessity, it is not, and cannot be made, the sole consideration. To permit courts to arbitrarily fix a definite season when water for direct irrigation may be used would be to allow them to fasten a limitation upon a vested right not attached to it by the decree itself, or by any constitutional or statutory provision or decision of this court. It appears that all these decrees have been in force for years, and that water has been diverted and used under them at any and all times. To now judicially declare that the users thereunder can divert and apply water for the irrigation of their lands and crops from April 15th to October 1st of each year only, is in effect a modification of decrees vesting property rights, which have been used and enjoyed, without such limitation, for upwards of twenty-five years. No lawyer would contend for, and no court would now permit, such a modification in a direct proceeding for that purpose. This being true, how can it be held lawful and proper for the court, by the indirect method of dividing the year into seasons for direct irrigation and for storage, respectively, to accomplish such result? It is a universally accepted legal maxim that courts may not do indirectly that which they are without power or authority to do directly. These decrees had no time limit within which use could be made of them when awarded. Where, and with what tribunal, does the power and authority now lie, after such a lapse of time, to arbitrarily attach to them such limitation? We are confidently of the opinion that courts have no such power, and that the question of the division of the year into direct irrigation and storage seasons is not a judicial one. In the very nature of things no season can be judicially fixed for the use of water for domestic purposes, or for the use of water for power or manufacturing purposes. In this respect the law discloses no distinction between appropriations for agricultural and for

domestic and manufacturing purposes. The use of water for all these purposes, when a valid appropriation has been made, is limited only by the law of necessity. Appropriations for each of these beneficial uses take effect and may be enjoyed by the rule of priority, and under the Constitution none of them yields to the other in regard to date by reason of the character of use. In fifty years of experience in practical irrigation in this state neither the legislature nor this court has attempted to fix an arbitrary season for direct irrigation. Whether the legislature might do so is not before us, and therefore not only is not, but could not now properly be, determined. That question is, therefore, left entirely open and unaffected by this decision.

In the light of the history and development of this all important industry, consideration being given to the different altitudes of the different parts of the state, and even in the different water divisions thereof, where agricultural pursuits are carried on, varying climatic conditions, changes in the character and nature of the seasons from year to year, difference in soil and variety of crops grown, it would be impossible for the courts to lay down a uniform rule definitely fixing such a season, which could fairly be said to afford parties interested equal protection of the law. If courts may arbitrarily fix a season covering the period from April 15th to October 1st of each year, why may they not with equal propriety designate a much shorter season, or an entirely different one? If the matter is to be left to the courts at all, seasons of varying length, covering different periods, according to the experience, observation, environments, moods and caprice of each particular judge, having such question under consideration, would inevitably follow, resulting possibly in injustice and inequality, and certainly in endless conflict and confusion, with attendant strife and interminable litigation.

Much argument has been indulged respecting non-economical and wasteful use of water. As we view the allegations of the complaint, these questions are not, properly before us. For, as already indicated, and as shown by the decree of the court, this was a suit to have the time of use of the waters of the Cache la Poudre river and its tributaries for irrigation purposes divided into two seasons, during one of which they might be employed for direct irrigation and the other for storage. There is no pretense that the suit was one to restrain waste, or to enforce economical use. No such relief was sought or given. This action in fact is not, and cannot be, one for these purposes. An action of such a character could only be maintained against the person or company guilty of unlawful conduct in that respect, or against those who jointly participate in such infractions of the law. Individuals, companies or corporations guilty of separate or independent offenses of this character could not properly be joined in an action for relief, as was done here. Each separate offender, or those acting jointly, would be held to answer for his or their own wrong in independent actions. In this connection it may not be amiss to state that it is not intended by this opinion to indicate that direct irrigators are to be allowed to take, have or receive water, under their decrees, in excess of their needs, nor are they to be permitted to use water in such a non-economical way as to amount to waste. In all such cases a right of action by a junior appropriator, injured by that character of use, may be maintained and relief granted, upon proper allegations and proofs, when water officials fail or decline to give proper protection.

This court recognizes the urgent and ever increasing necessity for the enforcement of the doctrine of economical use of water for irrigation, as it has consistently done

in the past, and urges upon the officers of the law, the courts and users and consumers of water themselves, ready acquiescence therein and an efficient enforcement thereof. Whenever there is a wasteful, or other unnecessary or unlawful use of water, it should be promptly and efficiently dealt with under the law. By this opinion the rights of the direct irrigator are in no sense enlarged or broadened, but they are only declared as they now exist, and have existed since the entry of their respective decrees.

It is also urged that this court has recognized the fact that there may be a limitation as to the time of use upon decreed appropriations of water for irrigation, which is true, but this has occurred only when the decree itself fixed the limitation, or where in a proper action it had been shown, by competent evidence, that the actual use had been in fact so limited. Upon the whole record, including the decrees submitted and the proofs adduced respecting the diversion and use of water under them, the situation here appears to be precisely contrary to that shown to have been present in cases where such limitation was recognized.

Other matters of moment and engaging interest have been most ably presented in the briefs of opposing counsel, but they are not of a character to affect or alter the views of the court as already indicated upon the fundamental and controlling questions presented, and we refrain, therefore, from consideration of, or comment upon, them.

The judgment is reversed and the cause remanded to the trial court with directions to dismiss the complaint.

Decision *en banc.*

Mr. JUSTICE GARRIGUES dissents.

Mr. Justice White, concurs in the reversal of the

judgment, for the reason that the complaint as subject to the demurrer interposed by plaintiffs in error upon the grounds assigned therein. He expresses no views upon matters discussed in the opinion, after it had once been determined that the complaint failed to state a cause of action.

Mr. Justice Hill not participating.