## LARAMIE IRRIGATION & POWER CO. v. GRANT

(No. 1766; July 21, 1932; 13 Pac. (2d) 235)

(Rehearing denied September 26, 1932, without opinion)

For the appellant George Grant, there was a brief by *James A. Greenwood*, Attorney General, *Richard J. Jackson*, Deputy Attorney General, and *George W. Ferguson*, Assistant Attorney General, all of Cheyenne, Wyoming, and oral arguments by *Mr. Greenwood* and *Mr. Jackson*.

For the appellant and intervener Wyoming Development Company there was a brief and oral argument by *William E. Mullen*, of Cheyenne, Wyoming.

For the plaintiff and respondent, there was a brief by *Corthell, McCollough & Corthell*, and *C. P. Arnold*, of Laramie, Wyoming, and oral argument by *Mr. Corthell*.

400

402

BLUME, Justice.

This action was commenced in 1919 to enjoin George Grant as water commissioner from attempting to regulate the distribution of water in favor of the Wyoming Development Company. The petition alleges that plaintiff is the owner and in possession of the Lobach ditch, taking water from the Little Laramie River and its tributaries; that the board of control in 1892 adjudicated 59 cubic feet of water per second of time for 4120 acres of land underlying said ditch as of a priority dating from March, 1888; that the defendant water commissioner, upon the complaint of the Wyoming Development Company, has regulated and will, unless enjoined, continue to regulate the headgate of the Lobach ditch, and shut it down to a point where the owners of that ditch will not get the amount of their appropriation or of their needs; that the Wyoming Development Company is not an appropriator or consumer of water from the Little Laramie River or its tributaries; that its appropriations relate wholly to the Big Laramie River and its tributaries, and that the rights of said company were not

adjudicated at the same time as the rights of the owners of the Lobach ditch, and that the latter were not a party to such adjudication. A temporary restraining order was issued on June 19, 1919. On July 9th, 1919, the water commissioner filed an answer, and on July 29, 1919, the Wyoming Development Company, upon leave being granted, intervened in the cause and filed an answer. Various proceedings, not important, were had in the succeeding years. On June 12, 1931, the water commissioner filed an amended answer, alleging in brief that the Wyoming Development Company is an appropriator from the Big Laramie River and its tributaries, including the Little Laramie River; that its appropriation of 633 cubic feet of water per second of time, as adjudicated by the board of control, is prior in right to that of the plaintiff, dating from 1883; that he regulated the headgate, supplying water to the Lobach ditch, for the purpose of distributing the water appropriated according to priority of right, and that plaintiff's petition fails to state any cause of action for an injunction against him. The Wyoming Development Company, too, had, in its intervening answer, alleged its right of appropriation to be superior to that of the plaintiff. Motions made to strike a portion of that answer, as well as of the amended answer of the water commissioner, need not be considered. The cause came on for trial on October 19, 1931. The following facts were agreed on:

1. The plaintiff is the owner and in possession of the Lobach ditch, which draws its supply of water from the Little Laramie River and its tributaries.

2. At the time of the action taken by the defendant which is complained of in the petition in this case, and at the time of the bringing of this action, the plaintiff company and its members and shareholders, owners of lands and water-rights under the Lobach ditch, were in need of water for irrigation to fill their appropriation and were using the water diverted through the ditch for that purpose.

3. The defendant George Grant, as Water Commissioner, on the complaint of the Wyoming Development Company, whose appropriation was from the Big Laramie River at a point below the junction of the two streams, shut down the headgate of the plaintiff's ditch, depriving them wholly of water, for the purpose of turning the water down the Little Laramie River into the Big Laramie River and supplying the appropriation of the Wyoming Development Company. The defendant stated in so doing that it was his intention to continue to regulate the flow of water of the Little Laramie River and prevent the flow into the Little Laramie ditches for the purpose of giving a continuous supply to the Wyoming Development Company for its appropriations on the Big Laramie River.

4. At the time stated there was insufficient water available in the Big Laramie and Little Laramie Rivers to satisfy the adjudicated appropriations, and there was an insufficient supply in the Big Laramie without the flow from the Little Laramie to satisfy the adjudicated appropriations on the Big Laramie.

5. The State Board of Control in 1892 conducted a proceeding theretofore begun for the adjudication of water-rights on the Little Laramie River and tributaries, which proceeding resulted in the adjudication, in March, 1892, of the right of the plaintiff for the Lobach ditch amounting to fifty-nine cubic feet per second for the irrigation of forty-one hundred and twenty acres underlying said ditch.

It was further stipulated that in April, 1899, the state board of control instituted a proceeding for the adjudication of priorities of right to the use of water on the Big Laramie River, and that certain notices in connection therewith were duly published. Not all the details thereof need be noted. One of the notices was dated on April 12, 1899, giving notice that measurement of the Laramie River and all its tributaries, not "heretofore adjudicated" would be commenced on or after May 29, 1899, and that on November 7, 1899, at Laramie, Wyoming, the water superintendent would begin taking testimony as to the rights of the parties claiming water from "said stream and tributaries." A further notice was given on October 4, 1899, postponing the

taking of the testimony and proof of "beneficial use and appropriation of water from Laramie River and tributaries" till the 8th day of May, 1900. And another notice was given on April 19, 1900, again somewhat postponing the taking of testimony, and calling the attention thereto "of all appropriators of water from the Laramie River and all its tributaries, except Little Laramie." It further appears from the record that evidence of appropriation was taken in accordance with the notice last published. Thereafter, on July 17, 1900, the water superintendent duly published a notice, which, so far as may be material here, is as follows:

"To Appropriators of water on Laramie River
Office of Board of Control, State of Wyoming.
Cheyenne, Wyo., July 17, 1900.
Notice is hereby given that the taking of evidence and proofs of appropriations of water from the Laramie River and its tributaries has been completed, and that I will be and appear at Laramie City, county of Albany, state of Wyoming, at the county court house on the 8th day of August, 1900, at the hour of 10 o'clock a. m., at which time and place all of said evidence and proofs so taken will be open to the inspection of the various claimants to water from said stream and its tributaries. Said evidence and proof will be so kept open at said place from 10 o'clock a. m., to 5 o'clock p. m. each day for three successive days, beginning on said 8th day of August, 1900, and closing on the 10th day of August, 1900."

According to admitted pleadings, the board of control adjudicated the rights of appropriation from the Big Laramie River at its meeting in March, 1903, but there is nothing to show that the appropriators from the Little Laramie River appeared or participated therein, and the evidence of Mr. Arnold indicates the contrary. The adjudication made by the board was appealed to the District Court of Laramie County, and was, in 1912, affirmed. It embraced the rights of a great many appropriators, and granted to the Wyoming Development Company 633 cubic

feet of water per second of time, the priority right dating from 1883.

At the conclusion of the trial, the court rendered judgment in favor of the plaintiff, and against the defendant and intervenor, and enjoined the water commissioner from regulating the headgate of the Lobach ditch or shutting it down, "upon the complaint or for the benefit of the Wyoming Development Company, or under any pretense of serving its prior rights established in any other adjudication or proceeding, unless and until there shall be an adjudication of priorities of rights as between the plaintiff and the Wyoming Development Company to which the plaintiff shall be made a party. This decree shall not prevent the defendant, his successor in office or those lawfully acting in aid of such office from lawfully regulating upon complaint the distribution of the water of said Little Laramie River and tributaries as between the ditches diverting water from said stream and not from the Big Laramie River."

It will, accordingly, be noted that the trial court took the view that, inasmuch as the appropriators from the Little Laramie River were not party to the adjudication of the appropriators direct from the Big Laramie River, the water commissioner had no authority to act as between the appropriators from these respective streams, unless a binding adjudication as between such appropriators respectively, should be made. And the correctness of that holding is the main question before us. From the judgment so entered, the defendant and intervenor have appealed. The parties will herein be designated as in the court below, treating both the water commissioner as well as the intervenor, however, as defendants.

1. The rights of both the plaintiff as well as the Wyoming Development Company originated during territorial times. The constitution of the state (Art. 8) provided for a board of control, consisting of the state engineer and

superintendents of water divisions, which should have the supervision of the waters of the state and of their appropriation, distribution and diversion and of the various officers connected therewith. The first state legislature, meeting in 1890, provided for the determination, by such board, of priorities of right to the use of the waters of the state, then consisting only of territorial rights; that such determination should begin on the streams most used for irrigation and should continue till completed. Section 122-103, R. S. 1931. In connection therewith the law provided for measurement of streams, filing of statements of claims by the various appropriators and evidence in support thereof, and that upon completion of the taking of evidence by the division superintendent, he should give notice by publication, and by registered mail to the various claimants to the effect that at a time and place set, all of the evidence should be open to inspection. It was further provided (Sec. 122-112) that if any person owning any irrigation works, or claiming any interest in the stream or streams involved in the adjudication should desire to contest any of the rights of the persons so submitting their evidence, they should have the right to do so, and provisions for the proceedings thereunder were made. The board of control was directed that it should, after the return of the evidence by the water superintendent, "make and cause to be entered of record in its office an order determining and establishing the several priorities of right to the use of waters of said stream," each appropriation to "be determined in its priority and amount, by the time by which it shall have been made and the amount of water which shall have been applied for beneficial purposes." Sec. 122-107-117. From the determination so made by the board, any party aggrieved might appeal to the courts. Sec. 122-119. In Farm Investment Company v. Carpenter, 9 Wyo. 110, 151, 61 Pac. 258, it was held that the adjudication of the board of control was not, under the law as it then stood, *res adjudicata* as to the rights of a party not appearing before the board. There-

after, in 1901, (Sec. 122-136) the legislature made provision compelling all appropriators of water to appear before the board, and that "any claimant upon whom no other service shall be made than by publication in the newspaper, of the notice of such proceeding and taking of testimony, may, within one year after the entry of the order or decree of the board, determining the rights of the various claimants upon any particular stream or other body of water, have the same opened and be let in to give proof of his appropriation." In 1903 the legislature, evidently thinking that, perhaps, no sufficient or clear provision had been made for determining, or adjudicating the rights of the appropriators on different, but connected, streams, passed the following act:

"Whenever the rights to the use of the waters of any stream and all its tributaries within the state have been adjudicated as provided by law, and it shall appear by the records of such adjudication that it had not been had at one and the same proceeding, then in such case the state board of control shall be and is hereby authorized to give notice of the opening to public inspection of all proofs or evidences of appropriation of water, and the findings of the board in relation thereto from the stream and its tributaries in the manner and according to the provisions of § 122-111 and any person, corporations or associations who may desire to contest the claims or rights of other persons, corporations or associations, as set up in the proofs or established by the board, shall proceed in the manner provided for in §§ 122-113, 122-114 and 122-115; provided, that contests may not be entered into and shall not be maintained except between appropriators who were not parties to the same adjudication proceedings in the original hearings." (Section 122-137, Rev. St. Wyo. 1931)

It is the contention of the plaintiff that no adjudication has been made between the appropriators of the Little Laramie River, on the one hand, and those from the Big Laramie River, on the other, while the defendants contend that there has been, notwithstanding the fact that Sec. 122-137 has not

been carried out. They claim that the notice of July 17, 1900, above set out, was sufficient for that purpose. The defendants' contention can be upheld only by holding that the plaintiff was bound, in connection with the adjudication of the rights of the Big Laramie River, under the provisions of Sec. 122-112, providing for a contest, or under the provisions of Sec. 122-136 above quoted, providing that a party having notice only by publication of the proceedings before the board should have one year after entry of the decree to appear and have it opened. The point so arising is not easy of solution, has not been sufficiently argued, and we shall, for the purposes of this case, assume that no adjudication between the appropriators of the Little Laramie River, on the one hand, and the Big Laramie River, on the other, has ever been made.

2. We shall, then, consider the view taken by the lower court, as above stated, and the correctness of which is strenuously contended for by the plaintiff. The water commissioner acts simply as an administrative officer in carrying out the police power of the state. Van Buskirk v. Live Stock Co., 24 Wyo. 183, 156 Pac. 1122; Hamp v. State, 19 Wyo. 377, 118 Pac. 653; Parshall, State Engineer v. Cowper, 22 Wyo. 385, 143 Pac. 302; Ryan v. Tutty, 13 Wyo. 122, 78 Pac. 661. In the last cited case, the court said in part:

"These various provisions for the distribution of water in times of scarcity among different appropriators according to their respective priorities by public officials were doubtless adopted in pursuit of a wise and salutary policy to afford an economical and speedy remedy to those whose rights may have been wrongfully disregarded by others, as well as to prevent waste, and to avoid as much as possible unseemly controversies that are liable to occur, in the absence of suitable supervision, where several persons are entitled to share in a limited public commodity or privilege. But it is to be observed that the statute clearly contemplates that such official action shall be based upon a record of adjudicated priorities. They are not vested with arbitrary

control, but are required to divide the water according to the prior rights of the interested parties. The duties imposed upon them in the matter now under consideration are executive: they are administrative agents; and, while in the performance of their duties the exercise of judicial discretion is necessary to a very limited degree, the power conferred is executive rather than judicial. * * * He (the water commissioner) is not authorized to determine priorities. But in regulating the distribution of the water it may become incidentally necessary for him to ascertain for that purpose alone whether, and to what extent, a prior appropriator is injured by a diversion above him on the same stream or a tributary. The only object of his inquiry is that he may justly and fairly make a temporary distribution of the water in conformity with the adjudicated priorities.''

In McLean v. Farmers' Highline etc. Co., 44 Colo. 184, 98 Pac. 16, quoted in Hamp v. State, supra, it was said:

''The laws of the state providing for officials to distribute the water of our streams for agricultural uses according to adjudicated priorities were passed for the purposes of securing an orderly distribution of such waters, and to prevent breaches of the peace which would inevitably ensue if the owners of priorities were permitted to divert and divide the waters of our streams according to their ideas of their adjudicated rights and needs. These must be strictly enforced and observed, and the courts have no power to annul them.''

Section 122-303 provides:

''It shall be the duty of the said water commissioner to divide the water of the natural stream or streams of his district among the several ditches and reservoirs taking water therefrom, according to the prior right of each respectively, in whole or in part, and to shut and fasten, or cause to be shut and fastened, the headgates of ditches, and shall regulate or cause to be regulated the controlling works of reservoirs, in times of scarcity of water as may be necessary by reason of the priorities of right existing from said streams of his district.''

The water commissioner is by the section here quoted given the right to divide the water of the streams "according to the prior right" of the respective parties. That the legislature may give him such power cannot be, under the decisions, and is not, questioned. The authority given him is not to take property away from one party and give it to another. He must divide the water according to priority right. Whether it be a tabulation made in the state engineer's office; whether it be an adjudication of the board of control, or whether it be something else which he uses to arrive at his conclusion in his action, it is but a basis for the ultimate power to divide the water "according to priority right." And the presumption, ordinarily at least, is in favor of the legality of his action. 22 R. C. L. 472. There is in the case at bar no allegation or proof that plaintiff's appropriation of water is prior in time or right to that of the Wyoming Development Company, and ordinarily at least, accordingly, in view of the presumption stated, plaintiff's petition would be subject to the objection that it fails to state a cause of action or the proof in the case would be insufficient to sustain its claim. McLean v. Farmers Highline etc. Co., 44 Colo. 184, 98 Pac. 16; Downing v. Ditch Co., 20 Colo. 546, 39 Pac. 336; Comstock v. Reservoir Co., 58 Colo. 186, 145 Pac. 700. But it is argued, in effect, that these rules have no application in the case at bar, for the reason that, while the statute gives the broad power to the water commissioner to divide the water according to priority of right, his power under the statute is actually much more limited, and that it is given only in cases when the rights to the water which he attempts to divide and regulate have been "adjudicated." Furthermore, an adjudication, it is claimed, within the meaning of the statute, exists only when it is conclusive between the parties affected by the division of the water commissioner, and counsel for the plaintiff herein, accordingly, contend that, as held by the trial court, since there has been no adjudication between the appropriators of the Little Laramie River on the one hand, and

the Big Laramie River on the other, either pursuant to Section 122-137, supra, or otherwise, the water commissioner was without power to act in the case at bar.

It is true, as is claimed, that this court, in the decisions above cited, has held that it is the duty of the water commissioner, administrative as it is, to distribute water according to the priorities, as determined or adjudicated by the board of control. The court arrived at that conclusion in view of the provisions of Section 122-301 that water commissioners should be appointed from time to time "as the appropriations and priorities from the streams of the state shall be adjudicated," and further, in view, apparently, of the provision of Section 854, Rev. St. 1899 (subsequently repealed), that the water superintendent, under whose supervision the water commissioner acts should see to the enforcement of "priority of appropriation according to the tabulated statement of priorities." Nevertheless, these decisions do not intimate that such determination or adjudication serves as anything more than a basis for the action of the water commissioner, nor do they hold that an adjudication, to furnish such basis, must necessarily be conclusive in the sense contended for by the plaintiff. But, it is argued, the term "adjudication" necessarily implies that it must be conclusive between interested parties—in this case between the appropriators of the Little Laramie River on the one hand, and the appropriators of the Big Laramie River on the other, and that the term is equivalent to *res judicata*. That is the crux of the case. A number of authorities are cited showing the meaning of the term, and among others our attention is called to the case of Postal Tel. Cable Co. v. Newport, 247 U. S. 464, where it is said that a state cannot "without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein." There can, of course, be no doubt of the correctness of the statement just quoted. But it does not

help us in this case. The term "adjudication" may be used in a wider and a narrower sense. It has apparently been used interchangeably in our water laws with the term "determination." A proposition may be "determined," though it is not, necessarily, binding upon every one under all circumstances. And the same difference is recognized in the use of the term "adjudication" when courts distinguish between conclusive adjudication, and one that will, under certain circumstances be considered as only *prima facie* correct. Since the water commissioner acts only in an administrative capacity; since his function is merely to preserve the peace and see to it that water is, at a particular time, distributed and divided in a peaceful, orderly manner for the common good of all; since his decision is temporary only and determines the property rights of none; and since such decision can be overthrown at any time by showing that it is wrong, and that water is given to one which actually and in truth belongs to another—since, in other words, a determination or adjudication serves merely as a basis for action in carrying out the statutory requirement to distribute water "according to priority of right," it can hardly be argued, we think, that such determination or adjudication should necessarily be of the same solemnity and binding force as one which permanently establishes rights between the parties affected. If the statute authorizes him to act only in case an adjudication is conclusive between the parties claiming a water right, that, of course, is the limit of his power. But whether it does or not, is the question before us. And we must, accordingly, determine the intention of the legislative acts relating thereto. But in that connection we should, we think, bear in mind that when plaintiff contends that the broad powers given by Section 122-303 to the water commissioner does not apply in this case, he contends virtually for an exception to a general rule. We should also remember that the water commissioner was created primarily for the purpose of acting in the nature of a policeman; that his services are just as

likely to be needed in a case such as presented here as in other instances; that there was at least some determination or adjudication of the water rights in question, whether binding under all circumstances or not; and that accordingly, the exception contended for by plaintiff should be indicated fairly clearly by our legislative acts.

Provision for the appointment of water commissioners and their powers were made by Session Laws 1890-91. At the same time the legislature provided for the "determination" of priorities on the various streams. All streams have tributaries. The Little Laramie River is tributary to the Big Laramie, and that in turn is tributary to the Platte River. The only way in which an adjudication could have been made conclusive in any water shed like that of the Platte River on all appropriators alike, would have been to have embraced in it not only the rivers already mentioned but all other tributaries and sub-tributaries alike. The large expense thereof and the great amount of time required is apparent, involving as it would not only the measurement of the water of the streams, which itself would be a large undertaking, but also the establishment of the hundreds, perhaps thousands, of claims. Apparently, according to the record before us, the money appropriated for the board of control was not sufficiently ample to justify it in undertaking too much in any one adjudication or determination, and it has, during many years—a fact doubtless well known to the legislature—adjudicated tributaries, without at the same time adjudicating priority rights on the main streams. The term "stream" has not been defined by the legislature. Nor is there any provision that, in order for the board of control to proceed to determine or adjudicate water rights, it must proceed to determine those of a whole watershed or of a whole stream at the same time. Taking all these facts into consideration, we think that the board was given a discretion in deciding the meaning of the term "stream"; that when it proceeded to adjudicate the priority rights on Little Laramie River, and later those on Big

Laramie River, it had, each time, jurisdiction and power to act; and that its adjudications each time were binding, at least on the parties directly involved, even though not binding on those of the other stream. In other words, there was each time, at least some sort of an adjudication.

Some light on the question before us is furnished, at least in so far as the early period of our law was concerned, by Section 854, Rev. St. 1899, relating to water superintendents, which provided (being similar to a provision in Colorado) that "if it shall appear that in any division of that district, any ditch, canal or reservoir is receiving water, whose priority post-dates that of the ditch, canal or reservoir, in another district * * * he (the water superintendent) shall at once order such post-dated ditch, canal or reservoir shut down, and the water given to the elder ditch, canal or reservoir, his orders being directed at all times to the enforcement of priority of appropriation, according to his *tabulated statement* of priorities, to the whole division and without regard to the district within which the ditches, canals or reservoirs may be located.''

The section is broad and sweeping, directing distribution of water according to priority of right in connection with the water of a whole water district, and which, in the case at bar, would include both the waters of Little Laramie and the Big Laramie Rivers. The section was enacted by the legislature of 1890-91 (Ch. 8, Sec. 17). No adjudications had at that time been made by the board of control, and the "tabulated statement" mentioned in the section would seem to refer either to one prepared by the water superintendent himself, in order for him to act, or, as is more likely, to tabulations of priorities which had theretofore already been made by the territorial engineer, as will be seen by an examination of his reports. The data then, according to which water was directed to be distributed, were at that time merely provisional. This legislative provision would seem to go far in showing that what was required on the part of the officer for the purpose of distributing water according

to priority of right was, in substance, merely a reasonable basis in accordance with which he could act, and would seem to negative the contention of counsel for the plaintiff that the requirement of a "conclusive" adjudication was in the mind of the legislature. The view expressed in Farm Investment Company v. Carpenter, 9 Wyo. 110, 143, 61 Pac. 258, would seem to indicate the same thing, for this court then said that the proceeding of the board of control in connection with adjudication of water rights was one to secure evidence of title, but that it was not *res adjudicata* as to one not participating therein. In fact, if we are not mistaken, counsel for plaintiff seem to concede that this was our early law, particularly in view of the decisions from Colorado, our law of 1890-91, in so far as here considered, being borrowed from that state.

The Colorado decisions having more or less bearing on this point are Farmers Ind. D. Co. v. Agricultural D. Co., 22 Colo. 513, 45 Pac. 444; Ft. Lyon Co. v. Ark. Valley Co., 39 Colo. 332, 90 Pac. 1023; McLean v. Farmers etc. Co., 44 Colo. 184, 98 Pac. 16; Rogers v. Nev. Canal Co., 60 Colo. 59, 151 Pac. 923; Ft. Lyon Co. v. Sugar Co., 68 Colo. 36, 189 Pac. 252. A few others might be added. Adjudications of water rights in Colorado are made, in the courts, by districts, and it is held that the adjudication in one district is *prima facie* correct as to appropriators in another district, and that the decrees of adjudication in the several courts must be treated as one. The case most in point herein is Farmers Ind. D. Co. v. Agricultural D. Co., supra. It construes the act of 1887, which contained a section similar to Sec. 854, Rev. St. 1899 above mentioned, and which also provided that water should be distributed by the water superintendent and water commissioner "in accordance with the rights of priority of appropriation as established by judicial decrees." The court said, in part, as to the effect of a decree in one district upon appropriators in another district, not a party to the decree:

"The statute clothes the superintendent with no judicial power. It provides that he shall ascertain the priorities as established by decrees of the district court, and register the same in a book to be kept for that purpose; and that he shall, to the best of his ability, take care that each and every ditch shall receive the water to which it may be entitled under such judicial decrees. The power conferred is executive, and not judicial. Murray's Lessee v. Improvement Co., 18 How. 272. Is the act of 1887 in violation of the inhibition against the taking of property without due process of law? It has been determined by this court in many cases that decrees adjudicating priorities to the use of water in several water districts are conclusive, under the acts of 1879 and 1881, between the ditches and canals of the particular water district in which such decrees are entered; but this is the first instance in which a question has been presented as to force and effect of such decrees between the various claimants to priorities in different districts. Under the act of 1887, these decrees are made *prima facie* evidence as between the different districts. They are not, however, made conclusive evidence. The courts are still open for the purpose of entertaining the usual proceedings, statutory or otherwise, that have hitherto been found appropriate for determining the priorities between claimants for water for irrigation of lands situate in different districts. In the absence of decrees settling the priorities between different districts, the water must be distributed or appropriated in some manner. If the provisions of the act of 1887 cannot be carried into effect, then each claimant is at liberty to determine such priority for himself, and take water accordingly. The inevitable consequence of such a course is to arouse the passions of the people, and, as said in the case of White v. Reservoir Co., 43 Pac. 1028, 21 Colo ——, to provoke unseemly breaches of the peace. This court has repeatedly held that statutes like the one under consideration may be enacted in the exercise of the police power of the state. * * * At the time of the convening of the legislature of 1887, the problem presented by the conditions then existing was difficult of solution. * * * The legislature, by the act of 1887, has attempted to solve the difficulty by providing an officer, and making it his duty to distribute the water according to the decrees rendered, without reference to the water district in which such decrees are to be found. As we have said, the act does not attempt to make such

decrees conclusive as between the various districts, but, in effect, it provides that until the courts shall determine otherwise in some appropriate proceeding, the superintendent shall treat the decrees as *prima facie* correct, and distribute water accordingly. We believe this regulation is fairly within the police power of the state, as defined in the case of White v. Reservoir Co., supra, and that it violates no constitutional provision; the effect being only to require the distribution of water in a certain way until such time as the rights of the parties can be definitely ascertained and adjudicated. White Reservoir Co., supra. Undoubtedly the owners of priorities in one water district may, by appropriate pleadings, challenge the correctness of decrees entered in other water districts, where the rights of the former are unjustly affected thereby, and this may be done by answer in this case; but until such decrees are impeached no sufficient reason has been advanced why the public officers, intrusted with the distribution of water, should not be governed thereby, and, as we have attempted to show, such a course offers a solution, free from constitutional objection, of what at best is a difficult problem.''

These decisions are not affected, so far as we can see, by Huerfano Valley D. Co. v. Hinterlider, (Colo.) 256 Pac. 305, since it deals only with the effect of successive decrees in the same district upon each other.

Section 854, supra, was repealed in 1907. In the meantime, in 1903, Sec. 122-137, quoted supra, was enacted. Counsel for plaintiff argue that this shows the intention of the legislature that the water commissioner should not thereafter have any power of regulating the distribution of water among appropriators of waters of streams, not adjudicated at the same time, unless the course pointed out in Section 122-137 has been pursued. The repeal of Section 854, supra, is contained in Ch. 86, S. L. 1907. It is apparent that this chapter was drafted pursuant to the report of a commission provided for by the legislature in 1905, for the purpose of studying the irrigation laws of this state. The report may be found in the eighth report of the State Engi-

neer, page 81 et seq. It says nothing in regard to Section 854, supra. An examination of the report will disclose that the commission, instead of wanting to relax any of the rules theretofore applicable in the administration of the water laws, wanted to strengthen them. It particularly points out the importance of the office of the water commissioner, and uses this significant statement: ''We are confident that the division superintendent and the water commissioner acting under his direction, should be responsible for the diversion and proper distribution of water among the various users.'' The commissioners further recommended that the powers of the water commissioner be extended over partnership ditches, which had not been true previously. That recommendation was carried out by the act of the legislature of 1907 above mentioned. If, accordingly, the contention of counsel for the plaintiff is correct, we should be compelled to say that the legislature on the one hand wanted to extend, and on the other hand wanted to diminish, the power of the water commissioner, and this in face of the fact that the office of the water commissioner was created in the first instance as a police measure so that the waters of the state might be distributed in a regular, peaceful manner, eliminating possible momentary and dangerous disputes and wrangles. We think that the conclusion drawn by counsel for the plaintiff is incorrect. It is probable that the legislature of 1907 thought that the provisions therefore contained in Sec. 854, R. S. 1899 were already sufficiently covered by other laws. That section, after all, made merely a specific application of the general principle stated in other sections, that water should be distributed according to priority of right, and that fundamental principle has never been changed. And when we take into consideration the further fact that in 1890 a mere tabulated statement from the state engineer's office was deemed to be sufficient for the regulation and distribution of water by the water superintendent, it is unlikely that the legislature of

1907, by repealing Section 854, R. S. 1899, meant to depart from the policy previously existing. Moreover the argument of counsel that an adjudication, in order to give water commissioners power over adjudicated rights, must be an adjudication that is conclusive, seems to be refuted when we consider the act of 1903. For under its terms an "adjudication" exists, even though made as to particular persons, or as to parts of their source of water, at different times. From that time on at least, the meaning of the term "adjudication," as used by the legislature in our water laws, is clear, and that meaning is contrary to that contended for by counsel for the plaintiff. And this further fact must be observed, and is, we think, important. The act of 1903 is not mandatory; it merely gives the board of control authority to follow its provisions. The legislature evidently believed that the steps there mentioned—namely, to co-ordinate various adjudications by another adjudication—were necessary to be taken in only a few instances, or not at all. The board of control might never take them, and yet, is it likely, in view of the specific function of the water commissioner above mentioned, that in that event he should not have any authority to distribute water according to priority of right among appropriators such as are involved in the case at bar, unless there was a conclusive adjudication between them? We think not, for if that had been in the minds of the members of the legislature, they would, it seems, in view of the policy of the water laws of the state, have made the section mandatory.

And one further legislative provision must be considered in this connection. Already as early as 1901, the Hon. J. A. Van Orsdell, then attorney general of the state, expressed the opinion in a letter to the State Engineer (6th Annual Report of State Engineer, p. 48), that even under the law as it then stood, the water commissioner had the power to regulate and distribute water under mere inchoate rights of appropriation evidenced by permits issued by the State Engineer. We need not express an opinion as to the cor-

rectness of this view under the laws then existing. But the legislature of 1917 (Sec. 122-303, R. S. 1931) adopted this view and provided that:

"It shall be the duty of said division superintendent to regulate and control the storage and use of water under all rights of appropriation which have been adjudicated by the board of control or by the courts, and to regulate and control the storage and use of water under all permits approved by the state engineer, whether the rights acquired thereunder have been adjudicated or not."

The water commissioner is under the control of the proper water superintendent (Sec. 122-203), and hence the law just quoted must be read in connection with other laws in order to determine the powers of the former. Two significant facts are disclosed by this law. The legislature had not previously, in such specific language, directed that water should be distributed in accordance with adjudications of the board of control. The act of 1903, as previously stated, shows clearly that the legislature considered an "adjudication" to have been made by the board of control, even though it did not embrace the rights of all appropriators, that is to say, though two adjudications as to the same stream had not been co-ordinated by another adjudication. This meaning must have been in the minds of the members of the legislature when they enacted the law of 1917 above stated, and hence, while they could not, constitutionally, make an adjudication binding upon any one not a party thereto, the conclusion seems to be inescapable that they meant to make all adjudications at least *prima facie* evidence of correctness. Furthermore when the legislature gave power to regulate the division of water even in cases when there has been no adjudication at all, but merely pursuant to a permit of the state engineer, it hardly seems likely that it did not want that power to be exercised in cases in which there has been at least some sort of an adjudication by the board of control or the courts, binding upon,

perchance, scores of people, and certainly of much greater sanctity than a mere permit — except in cases in which such adjudication is one that is conclusive on all interested parties, as contended by counsel for plaintiff.

Bearing in mind, accordingly, the facts just stated, and the further fact that under our early law a mere tabulated statement from the state engineer's office was sufficient as a basis upon which to act in the distribution of water by the proper officers, and the further fact that at least in our early law, as shown by the decisions of the Supreme Court of Colorado, all "adjudications" were *prima facie* correct, and the further fact that between 1907 and 1917 inclusive the legislature twice extended the powers of the water commissioner and of the water superintendent in the regulation and distribution of water, in order to carry out a fundamental policy evidenced by our law that the distribution of water shall be effected in an orderly way, and bearing in mind the further fact that control of distribution is just as necessary in a case like that at bar as in other cases, we conclude that there has been a determination or an adjudication of the rights of appropriation of the waters of Little Laramie River and Big Laramie River within the meaning of our statutes, so as to give the water commissioner the power to regulate and divide the waters thereof as prescribed by law, so that no waste may be committed, and the peace may be maintained in the community. Upon the assumption heretofore made, this adjudication is not conclusive; the plaintiff and persons similarly situated still have the right to show, in the proper proceeding, either before the board of control under Section 122-137, or in the proper court proceeding, that the adjudication of Big Laramie River, heretofore made, and *prima facie* correct, is not correct in fact, and that they have a water right, actually and in truth prior in right to that of the Wyoming Development Company or parties similarly situated. But until that showing is made, the water commissioner has the right, in his administrative capacity, and as a measure of police

power, and it is his duty, to divide and regulate the water between the two streams in accordance with the priorities as shown in the adjudications above mentioned heretofore made. The injunction, accordingly, issued herein should be dissolved.

The judgment of the District Court must be reversed and the case remanded for further proceedings not inconsistent herewith. It is so ordered.

*Reversed and Remanded.*

RINER, J., and KIMBALL, C. J., concur.