## RYAN v. TUTTY.

Water and Water Rights—Tributary Springs—Prior Appropria-
tion—Appeal 'and Error—Conflicting Evidence—Water Com-
missioner—Superintendent of Water Division—Res Judicata—
Courts—Jurisdiction—Injunction.

1. Where water from tributary springs composes part of the
   water flowing down a stream to the place of diversion of
   a prior appropriator on the stream, his right will be su-
   perior to that of one who makes a subsequent appropriation
   from such springs.

2. In a suit by a prior appropriator upon a stream to enjoin
   defendant's use of the water of tributary springs a finding
   that, because of sinking after reaching the stream, the
   water of the springs does not naturally flow down to
   plaintiff's headgate, and that plaintiff is therefore not in-
   jured by defendant's use of the springs, will not be· dis-
   turbed, the evidence conflicting on that point.

3. The duties and powers of water commissioners and superin-
   tendents of water divisions, in respect to the division of
   water among the several appropriators upon a stream ac-
   cording to the prior rights of each, are executive and not
   judicial, though in the performance of such duties the ex-
   ercise of a limited judicial discretion may be necessary.

4. The appeal allowed by statute to the superintendent of the
   proper water division from the action of a water commis-
   sioner in dividing the water of a stream between appro-
   priators, and from the superintendent to the State Engineer
   and from the latter's decision to the District Court, is not
   the exclusive remedy of an aggrieved party.

5. Though no appeal be taken as allowed by statute from the
   action and decision of the water commissioner and water
   division superintendent in dividing the water of a stream
   between different appropriators, such action and decision
   will not be conclusive upon the courts when the point in
   controversy comes before them for determination in an
   appropriate action between the interested parties.

6. Though one who uses water subject to appropriation in viola-
   tion of the orders of the water commissioner and water
   division superintendent may be liable to punishment as for
   a misdemeanor, under the statute, that fact will not au-
   thorize an injunction to restrain his use of the water at

the suit of the party claiming to be injured thereby, without a showing on the part of the latter that he is entitled to the water in controversy by priority of appropriation; the defendant claiming to have made a lawful appropriation thereof, and that his use did not injure the plaintiff.

[Decided December 2, 1904.]                    (78 Pac., 661.)

ERROR to the District Court, Crook County, HON. RICHARD H. SCOTT, of the First Judicial District, presiding.

The material facts are stated in the opinion.

*Nichols & Adams,* for plaintiff in error.

This action was brought not to adjudicate the rights of the parties to the waters in controversy, but to restrain the defendant from interfering with the rights of the plaintiff as adjudicated by the water commissioner and superintendent until such time as the proper authorities might adjudge that he was entitled to the same. The water commissioner and water superintendent had authority to make their orders in the premises such as would fully protect the parties in their respective rights. Said officers having found that the waters of Bonanza Springs belonged to the plaintiff and not to the defendant, and having ordered the latter to close his headgate and allow the springs to flow in their natural channel, the plaintiff is entitled to an injunction to restrain defendant from making any use of the waters of such springs; the defendant not having appealed from the decision of the superintendent, and by using the water being guilty of a misdemeanor under the statute. (Laws 1901, Chap. 102, Sec. 1; id., Chap. 86.)

It is not contended that the action of the water officials was final, nor that the defendant could not have applied to the courts for relief, but merely that until the defendant either appealed from the decision of the officers, or in some other way applied to the court for such relief as he might have been entitled to, the plaintiff is entitled to an injunction to restrain the use of the water by defendant in viola-

tion of the orders of the commissioner and superintendent. (Willey v. Decker, 11 Wyo., 496.) Priority of appropriation dates from the filing of the application in the engineer's office. (R. S. 1899, Sec. 929.) The water superintendent and water commissioner are in some manner connected with the State Board of Control, and what is done by them in accordance with the statute must stand until set aside by some proper tribunal.

*E. E. Enterline* and *H. A. Alden,* for defendant in error.

The plaintiff failed to prove any of the facts alleged in his petition. Since all the evidence offered to establish those facts, namely: the decision rendered by the superintendent and water commissioner, was excluded by the court, there was nothing for the court to do but to dissolve the injunction.

Instead of dividing the water in controversy in accordance with the adjudication made by the Board of Control, the officers took it from the first appropriator, the defendant, and attempted to give it to the second appropriator, the plaintiff, and it cannot be successfully contended that, having taken away the water from one lawfully entitled thereto, the wrong-doer can by an action in equity prevent the lawful appropriator from using the water until the latter shall appeal from the decision of the commissioner, which was made without authority and was unwarranted.

In this action the defendant had a right to interpose any defense that he might have, either legal or equitable. It was conclusively shown by the evidence that the plaintiff was not injured by the acts of the defendant, but, on the contrary, that the latter was injured in consequence of the unlawful acts of the water commissioner. It would be a strange doctrine that, under the circumstances of this case, a perpetual injunction should be granted in favor of the plaintiff when as a matter of fact he profited in no manner from the action of the water commissioner and the defendant was injured by being deprived of the water which he had lawfully appropriated.

The superintendent and commissioner were without right to adjudicate priorities between the plaintiff and defendant. Their sole duty was to distribute the water between the parties in accordance with the adjudication made by the Board of Control. It was not shown that plaintiff had a prior appropriation to the waters of the springs which were being used by the defendant, which fact must have been shown to entitle plaintiff to any relief in this action.

The decision of the water commissioner is not the decision of a tribunal, which, though wrongful, must prevail unless an appeal is taken. The authority of that officer is fixed by statute and no right is given him to take water from a prior appropriator and give it to a subsequent one. That is what was done by the officer in this case, and his acts were without jurisdiction and void.

POTTER, JUSTICE.

This action was brought in the District Court by the plaintiff in error, J. C. Ryan, claiming a prior appropriation of a certain quantity of the waters of Lytle Creek, to restrain the defendant in error, George W. Tutty, from interfering with plaintiff's alleged prior appropriation by diverting the waters of certain springs, known as Bonanza Springs, which are alleged in the petition to be tributary to said Lytle Creek. The prayer of the petition is "that the defendant be restrained from using the water from said spring or in any manner diverting it from its natural channel until such time as the proper authorities shall determine that he is entitled to the same, and for such other full and complete relief as the court may deem just and equitable in the premises." Among other things, it is alleged in the petition in substance that the water division superintendent and the water commissioner had investigated the claim of the plaintiff and had decided that the plaintiff was entitled to the water flowing from the springs used by defendant, and that the commissioner under the direction of the superintendent had ordered the defendant to allow the water of

such springs to flow into the creek for plaintiff's use; and
that no appeal had been taken from said decision and order,
but that defendant continued to use the water of said springs
in violation thereof. The petition contains an allegation of
irreparable injury to the plaintiff unless the defendant be
enjoined as prayed.

On final hearing, the District Court found generally for
the defendant, dissolved the temporary restraining order,
and decided that the same ought not to have been granted.
Judgment was accordingly entered in favor of the defendant
and he was awarded costs.

From the evidence it appears that the plaintiff was granted
by an order of the Board of Control, entered June 2, 1894, a
certificate of appropriation of water from Lytle Creek, his
appropriation being numbered "6" as a first appropriation,
nothing being awarded him under that certificate for any
subsequent appropriation. It further appears that he was
by an order of the board, entered October 19, 1899, granted
a certificate of appropriation of water from the same stream
designating his first appropriation as number "2" on that
stream. The date of the appropriation is not given in the
first certificate, but in the second the date is fixed as June
10, 1896.

There was introduced in evidence on behalf of defendant
a certificate of appropriation issued to him by order of the
Board of Control, entered March 14, 1901, granting him as
a first appropriation, priority number one (1) of the water
from "springs tributary to Lytle Creek through the Bonanza
Ditch," and reciting the date of such appropriation as July
8, 1899. No priority number on main stream was desig-
nated in his certificate.

On the basis alone of these certificates it would appear
that the appropriation of the plaintiff antedated that of
defendant, and that if the springs from which defendant's
appropriation was made were and are in fact tributary to
Lytle Creek, and the waters thereof go to form part of the
waters naturally flowing in the main stream at the place

where plaintiff's diversion is made, the priority of plaintiff would be superior to that of defendant. No additional evidence of plaintiff's appropriation was offered, except his own testimony to the effect that since making application for an appropriation in 1894 he had continuously used the waters of Lytle Creek for the irrigation of lands described in his certificate of appropriation.

Upon the evidence the principal controversy between the parties is whether or not the springs used and claimed to have been appropriated by the defendant do in fact compose part of the waters naturally flowing in Lytle Creek down to the plaintiff's headgate. There seems to be no doubt but that Bonanza Springs, so-called, are tributary to Lytle Creek. The evidence discloses that there are two or more of those springs rising respectively from one hundred feet to one hundred and fifty yards from the main creek bed, and flowing in a well defined channel into the creek; and that after following along the creek bed for a short distance, probably a quarter of a mile, the water sinks, and the creek is then in ordinary times, and indeed at all times except after a heavy or continued rainfall, dry for a distance variously estimated by the witnesses of from one to two miles, when the water rises again at a point a few yards above some other tributary springs. It appears also from the undisputed testimony of one witness that above Bonanza Springs the creek bed is dry except in seasons of high water or heavy rains for about two miles, and above that there is usually more water in the stream than below Bonanza Springs..

The point of plaintiff's diversion is located from eight to ten miles below Bonanza Springs, and the witnesses differ as to whether the water of those springs after sinking constitutes any part of or enlarges the flow of the stream from where the water rises, and whether the use by defendant of the water of the springs interferes in any way with the appropriation of plaintiff. There is a very substantial conflict on that question of fact. The plaintiff testified that he

received less water through his headgate whenever the defendant obstructed the flow of the springs into the creek; and in this he is corroborated by the water commissioner, who also testified that plaintiff was not receiving the amount of his appropriation, and for that reason he had ordered the defendant's headgate closed. The division superintendent stated as his opinion that defendant's diversion of the springs interfered with the flow of the water below, but his opinion was based largely upon affidavits presented to him, and was not the result alone of his own observation, nor does it appear that he made any careful or extended personal examination. On the other hand, several witnesses testified from observation and measurements that whether the water of the springs was allowed to flow into the creek or not, it caused no perceptible difference in the quantity of water naturally flowing in the stream below the place where it sinks; and that the quantity flowing down to the plaintiff's headgate is not affected by defendant's appropriation and use of the springs. It does not appear that any witness possessed expert knowledge or skill in determining such a matter, and, therefore, the evidence on the subject on either side is not as satisfactory as might perhaps have been possible. But there is a clear conflict in the evidence, and on that question no reason is perceived for disturbing the finding and judgment of the trial court. We understand this to be practically conceded by counsel for plaintiff in error, who contend for a reversal upon another ground now to be considered.

Prior to commencing this suit the plaintiff had invoked the services of the water commissioner to distribute the water of the stream, and, on the trial, he attempted to show by the testimony of the commissioner and the superintendent of the water division that they had respectively decided that the plaintiff was entitled under his appropriation on Lytle Creek to a prior right over defendant to the water from Bonanza Springs, as tributary to said creek; but the evidence was excluded. Although it appears that no record

was made of the proceedings on the part of the commissioner and superintendent, the effort of the plaintiff was to show that the commissioner having decided that the defendant was not entitled to divert the water rising in the springs, until the appropriation of plaintiff was satisfied, and having ordered defendant to close his headgate and permit the water of the springs to flow into the main stream, defendant appealed to the superintendent, who verbally sustained the commissioner's decision; and that no further appeal was taken, but that defendant continued to divert the springs into his ditch in violation of the orders of the commissioner and superintendent.

Counsel for plaintiff proceeded on the theory, and they now contend, that this is not fundamentally a suit to determine the relative rights of the parties as appropriators, but that the decision of the commissioner and superintendent is binding upon defendant until set aside on appeal, and that defendant's only recourse was an appeal to the State Engineer, under Section 891 of the Revised Statutes, as amended in 1901. In other words, it seems to be maintained that the decision of the officers aforesaid amounted to an adjudication of the controversy between the parties as to their respective rights to the water of the springs, and that without any other showing plaintiff is entitled to an injunction restraining defendant from violating the orders in the premises made by such officers, and, further, that the correctness of their decision and orders is not a proper subject of inquiry in this action.

We cannot agree with counsel. In our opinion, the testimony was properly excluded. It will be observed that the Board of Control had made no order or decree determining this particular matter; that is to say, the board had not by any order, so far as the evidence discloses, determined the matter here in dispute, viz: whether, although tributary to Lytle Creek, the springs contribute anything to that stream below the place where it sinks. No doubt it became incumbent upon the commissioner when his services were re-

quested to satisfy himself on that question before acting.
But his decision, or a failure to take an appeal therefrom,
did not cut off the right of the interested parties to contest
the matter in some proper proceeding in the courts, nor
divest the courts of their general jurisdiction in the
premises.

Under the system in force in this state for the super-
vision and distribution of appropriated waters, the state is
required to be divided into water districts by the Board
of Control; such districts to be created whenever a neces-
sity therefor arises, and from time to time as the appropria-
tions and priorities thereof shall be adjudicated. (R. S.,
Sec. 888.) For each water district a water commissioner
is appointed (Sec. 889), and it is made his duty to divide
the water in the natural stream or streams of his district,
among the several ditches taking water therefrom, accord-
ing to the prior rights of each, respectively, in whole or in
part, and to shut and fasten, or cause to be shut and fast-
ened, under the direction of the superintendent of his water
division, the headgates of ditches heading in any of the
natural streams of the district when, in times of scarcity of
water, it is necessary to do so by reason of the priority of
rights of others taking water from the same stream or its
tributaries." (Sec. 890.) The succeeding section (891)
reads as follows:

"Said water commissioner shall, as near as may be, divide,
regulate and control the use of the water of all streams
within his district by such closing or partial closing of the
headgates as will prevent the waste of water, or its use in
excess of the volume to which the appropriator is lawfully
entitled, and any person who may be injured by the action
of any water commissioner, or by his failure to act pursuant
to this chapter, shall have the right of appeal to the division
superintendent, and, from his decision, the party aggrieved
may appeal to the State Engineer. And from the decision
of the State Engineer in said matter an appeal may be had
to the District Court of the county wherein the ditch or

ditches over which the controversy arises are situated."
(R. S., Sec. 891, as amended, Laws 1901, Ch. 102, Sec. 1.)

Section 894 provides that water commissioners shall be-
gin their work at the written call of two or more appro-
priators, owners or managers of ditches; and *may* begin
at the written call of one appropriator, owner or manager,
if the reasons given are deemed sufficient by the commis-
sioner. (Sec. 894, as amended, Laws 1901, Ch. 102, Sec. 1.)

The division superintendent is given immediate direction
and control of the acts of water commissioners, and of the
distribution of water in his division (R. S., Sec. 849); and,
under the general supervision of the State Engineer, is re-
quired to execute the laws relative to the distribution of
water in accordance with the right of priority of appropria-
tion. (Sec. 850.) He may order any ditch to be shut
down so that the water may be given to one having an
earlier priority; and his orders in that respect are to be
directed at all times to the enforcement of priority of ap-
propriation, according to his tabulated statement of priori-
ties. (Sec. 854.) It is declared a misdemeanor for any
person to wilfully use water or conduct water into or
through his ditch which has been lawfully denied him by
the water commissioner or other competent authority. (R.
S., Sec. 971, as amended, Laws 1901, Ch. 86, Sec. 1.)

These various provisions for the distribution of water in
times of scarcity among different appropriators according
to their respective priorities by public officials were doubt-
less adopted in pursuit of a wise and salutary policy to
afford an economical and speedy remedy to those whose
rights may have been wrongfully disregarded by others,
as well as to prevent waste, and to avoid as much as pos-
sible unseemly controversies that are liable to occur, in the
absence of suitable supervision, where several persons are
entitled to share in a limited public commodity or privilege.
But it is to be observed that the statute clearly contemplates
that such official action shall be based upon a record of
adjudicated priorities. They are not vested with arbitrary
control, but are required to divide the water according to

the prior rights of the interested parties. The duties imposed upon them in the matter now under consideration are executive; they are administrative agents; and, while in the performance of their duties the exercise of judicial discretion is necessary to a very limited degree, the power conferred is executive rather than judicial, and although an appeal is allowed from their action and decision to higher authority, and even in the end to the courts, we find no design in the statute to render the remedy by appeal exclusive.

Under very similar provisions in the statutes of Colorado, the Supreme Court of that state say: "The statute clothes the superintendent with no judicial power. It provides that he shall ascertain the priorities as established by decrees of the District Court, and register the same in a book to be kept for that purpose; and that he. shall, to the best of his ability, take care that each and every ditch shall receive the water to which it may be entitled under such judicial decrees. The power conferred is executive, and not judicial." (Farmer's Ind. Ditch Co. v. Agr. Ditch Co. et al., 22 Colo., 513 (45 Pac., 444.) And, in that case, which sought an injunction against the adverse appropriator jointly with the State Engineer, superintendent of irrigation and water commissioner, the petition alleging that such officers were distributing the water in controversy in violation of the rights of plaintiff to his injury, it was held that the officers were properly made defendants. It seems not to have been supposed in that state that the decision and action of the commissioner and superintendent or engineer in distributing water to the several appropriators on a stream constituted such an adjudication of the matter as to prevent aggrieved parties from asserting their rights in appropriate proceedings in the courts. (See Armstrong, Water Com., v. Larimer Co. Ditch Co., 27 Pac., 235 (1 Colo. App., 49) ; New Mercer Ditch Co. v. Armstrong, Water Com., 40 Pac., 989 (21 Colo., 354.) In California it was said, referring to water commissioners and their duties: "They are merely agents, selected for public convenience, to regulate the dis-

tribution of water according to the rights of the parties in interest. But they are not above the law, and have not the power to distribute the water according to their whim or caprice, regardless of the rights of those entitled to it; and we are therefore of opinion that their action in distributing to the defendants' more than their just proportion of the water, does not conclude the plaintiffs from obtaining redress in the courts." (Daley v. Cox, 48 Cal., 127.)

Primarily, the commissioner is authorized, whenever legally called upon, and it is his duty, to see that the water of a particular stream is diverted in accordance with the established priorities, and to prevent anyone from taking more water than he is entitled to take to the injury of others. He is not authorized to determine priorities. But in regulating the distribution of the water it may become incidentally necessary for him to ascertain for that purpose alone whether, and to what extent, a prior appropriator is injured by a diversion above him on the same stream or a tributary. The only object of his inquiry is that he may justly and fairly make a temporary distribution of the water in conformity with the adjudicated priorities. We perceive nothing in the statute, or in the nature of his duties, that renders a decision on his part in the premises a permanent adjudication of the matter, or that even prevents him from changing his decision when again called upon to perform similar duties should he conclude that he had previously acted erroneously.

It is true that it is the duty of appropriators and others to respect his authority and orders, and that, for a violation thereof, an offender may be punished, under the statute, as for a misdemeanor. But that is no reason for holding his action and decision binding upon the courts when the point in controversy comes before them for determination in an appropriate action between the interested parties.

This disposes of the questions presented by the record, and as we perceive no error, the judgment will be affirmed.

*Affirmed.*

CORN, C. J., and KNIGHT, J., concur.