## SIMMONS v. RAMSBOTTOM

(No. 2005; May 18, 1937; 68 Pac. (2d) 153)

420

For the appellant there was a brief and an oral argument by *Alvin T. Clark* and *Burt Griggs* of Buffalo.

For the respondent, there was a brief and oral argument by *H. Glenn Kinsley* of Sheridan.

424

Blume, Justice.

This is an action to have the court declare the rights of plaintiff to certain water rights to be superior to the rights of defendant; to quiet the title of plaintiff therein and for injunctive relief. Plaintiff Simmons claims the prior right as against the defendant, Wallace Ramsbottom, to all of the waters of Worth Creek, a tributary of the south fork of Crazy Woman Creek, by appropriations made through the Mountain, Worth, and Simmons No. 2 ditches. The defendant has appropriations out of the south fork of Crazy Woman Creek through the Silver Thread, the Rambler, Simmons No. 5, Curlew, Mayflower and Close Call ditches. The appropriations of defendant through the Silver Thread ditch and through the Rambler ditch have no bearing in this case, inasmuch as their intakes are above the junction of Worth Creek and the south fork of Crazy Woman Creek, but defendant claims a prior right to the waters of Worth Creek by reason of his appropriations through his other ditches. The appropriations through them are below the point of junction of Worth Creek and the south fork of Crazy Woman Creek. The lands of the

plaintiff are situated in Sections 26 and 27, T. 46 N., R. 83 W., 6th P. M. The lands of the defendant are located in Sections 23, 24, 25 and 30 of the same township and range. The following map shows more clearly the physical situation of the creeks and the various ditches:

On April 13, 1917, the State Board of Control of this state undertook to adjudicate the rights to the use of the waters of the south fork of Crazy Woman Creek and its tributaries. The adjudication is contained in Certificate No. 38, and the names of the creeks, ditches, appropriators and the date of the appropriations are given in the order named, and in so far as material here, are as follows:

### South Fork Crazy Woman Creek

| Name of Ditch | Name of Appropriator | Date of Appropriation |
|---|---|---|
| Mayflower | Wallace Ramsbottom | 1884 |
| Silver Thread | " " | 1884 |
| Rambler | " " | 1884 |
| Curlew | " " | 1884 |
| Simmons No. 5 | " " | 1884 |
| Close Call | E. H. Simmons | 1884 |

### Worth Creek, Tributary South Fork Crazy Woman Creek

| Name of Ditch | Name of Appropriator | Date of Appropriation |
|---|---|---|
| Mountain | Edward S. Simmons | Feb. 1884 |
| Worth | " " | " |
| Simmons No. 2 | " " | " |

Steele Creek, Tributary South Fork Crazy
Woman Creek

Steele Creek  John S. McWilliams  Fall, 1883

And the certificate, among other things, recites:

"That the priority of the several rights on the various streams as set forth in the above table shall be in the order named."

Under the order of the board, as shown by this certificate, there was adjudicated to the plaintiff, through the ditches above named, 1.19 cu. ft. of water per second of time to irrigate 75.3 acres of land located as above mentioned. Defendant's appropriation, in the same certificate, is to the extent of .99 cu. ft. of water per second of time through the Mayflower ditch, 1.0 cu. ft. of water per second of time through the Rambler ditch, 1.37 cu. ft. through the Curlew ditch, .43 cu. ft. through the Simmons No. 5 ditch, and .03 through the Close Call ditch.

The case was tried to the court without a jury; judgment was entered for the plaintiff as prayed, and his rights were declared and adjudged to be superior to any of the rights of the defendant in and to the waters of Worth Creek.

1. Defendant claims that even if the time of actual appropriation of the water is material herein, which he denies, plaintiff has not shown that his rights to the waters of Worth Creek are superior to those of the defendant herein. No testimony was introduced by the defendant to show when the appropriations were made. Plaintiff testified in the case, and stated that he arrived on Crazy Woman Creek on July 7, 1884. It seems that Thomas Worth at that time owned and was living on the land now owned by the plaintiff herein. Plaintiff testified that the Mountain, Worth, and Simmons No. 2 ditches *"were* made when I arrived there." The word "were" is equivocal, and under the circumstances may be construed to mean that the ditches had already been

constructed on July 7, 1884, or that they were constructed thereafter. He further testified "they were constructed in the spring and summer of 1884." The witness George T. Clayton testified that he was on the place in May and June, 1884, and that the ditches were then in existence and the land was being irrigated at that time. Taking all of the testimony into consideration, it would seem, or the court at least had a right to conclude, that the ditches last above mentioned were in fact already in existence when the plaintiff arrived on Worth Creek on July 7, 1884. Plaintiff also testified that he constructed all the ditches of the defendant, excepting Simmons No. 5 ditch; that the Mayflower ditch was constructed in 1885 and the Curlew ditch in 1886, and the Simmons No. 5 ditch in 1893; that the Silver Thread ditch was partly constructed in 1884 and partly in 1885, seemingly for C. J. Simmons, a brother of the plaintiff herein. There is of course no escape from the conclusion, if what we have already stated is correct, and if plaintiff himself constructed the ditches, that the appropriations for plaintiff's lands were made prior to those for the lands of defendant. The testimony shows that the water so appropriated for plaintiff has been used continuously upon his lands since the time of the appropriation, and that the rights of plaintiff were always recognized as superior to the rights of the defendant by the water commissioners supervising the distribution of the water up to and including 1934. In 1935 the water commissioner, however, under direction of the State Engineer, and at the request of the defendant, recognized the defendant's rights as superior. The only fact which throws any cloud upon the testimony hereinabove mentioned is a verified statement made by the plaintiff on September 1, 1886, filed in the office of the County Clerk of Johnson County, Wyoming, to the effect that C. J. Simmons made an appropriation through the Mayflower ditch, and that

"the date of appropriation of water by original construction of said ditch was the 25th day of February, 1884." Plaintiff testified that the date of appropriation mentioned in the affidavit is incorrect. It is, of course, true, as counsel for the defendant claims, that the recollection of the plaintiff should have been better in 1886 than it was at the time of the trial of this case. Still, dates are sometimes but relative; and if it is correct, as plaintiff claims, that he himself constructed the Mayflower ditch, the date of February 25, 1884, cannot be correct. Whatever discrepancy there was in the testimony was to be reconciled by the trial court, and we think that there was abundant evidence which justified it in finding that the plaintiff's appropriation was in fact made prior to that of the defendant. In fact, we do not see how the court could have come to any other conclusion.

2. The State Board of Control, as heretofore stated, on April 13, 1917, attempted to adjudicate the rights to the use of the waters of the south fork of Crazy Woman Creek and its tributaries, in the manner hereinbefore mentioned. Counsel for the defendant contend that the decree gives defendant priority over plaintiff; that it is final, inasmuch as both parties to this action participated therein; that the instant action, accordingly, is a collateral attack on that order and that this will not be permitted. The conclusion is doubtless correct, if the premises are. The trial court found against the contention of the defendant. Its finding on that particular point is as follows:

"The court finds that the said order of adjudication made by the said Board of Control relative to the irrigation waters of said streams * * * and hereinabove mentioned is a valid adjudication of water rights, but that by said order priorities of appropriations are fixed by streams and that said Board did not determine that the priorities of the South Fork of Crazy Woman Creek were superior to those of Worth Creek or other

creeks mentioned in said order and that said order fixed the priorities of each stream, but the order of priority applies only to the particular stream."

It may be noted that the date of plaintiff's appropriation is fixed as of a relatively certain date, namely, February, 1884. The date of the defendant's appropriation is stated as originating in "1884." There is nothing definite about this except that the appropriation was made not later than December 31st, 1884. Construing these facts together, it would seem that the Board of Control meant to make the rights of the plaintiff in the waters of Worth Creek superior to those of the defendant. In any event, it is certain, that the defendant's rights were not, under the mention of these dates, declared to be superior to those of the plaintiff. Counsel for defendant contend, however, that this was done under the provision of the decree already quoted, namely "that the priority of the several rights on the *various streams* as set forth in the above table shall be in the order named." We think counsel are in error. Certainly the language which is deemed to give such priority could have been much clearer, and if the decree had recited that "the priority of the several rights as set forth in the above table shall be in the order named," there might be room for the contention of counsel. But that is not the case. The decree mentions the "various streams." South Fork of Crazy Woman Creek, Worth Creek, Steele Creek, etc., are all mentioned, preceding the enumeration of the rights, and are, therefore, treated as separate streams. If, accordingly, the word "separate" is substituted for the word "various," which clearly may be done, it is apparent that by the clause mentioned the board merely fixed the priorities on the particular streams, including Worth Creek, and not the priorities of the appropriators of the waters of one stream relative to the priorities of the appropriators of the water of another; in

other words, the decree does not fix the priority of the rights of the defendant relative to the rights of the plaintiff. The construction of the court of the clause mentioned is correct. The most, accordingly, which the defendant can claim is that there was no adjudication of relative priorities between plaintiff and defendant. Hence the instant action is not a collateral attack of the decree. Willis v. Willis, 48 Wyo. 403, 49 P. (2d) 670. It merely attempts, in this view of the case, to supplement it. This conclusion is further substantiated by the fact that the rights of John S. McWilliams are fixed as of the fall of 1883, clearly prior to those of the defendant as well as of the plaintiff, and yet his name appears below that of the parties hereto. It is not likely that the board meant to make a right accruing in 1883 inferior to that accruing in 1884. This was attempted to be explained on the oral argument herein by the fact that the waters of Steele Creek do not interfere with the rights of the defendant—Steele Creek, seemingly, emptying into Crazy Woman Creek below the lands of the defendant. We do not, however, think that this is a sufficient explanation. If the clause in question means what counsel for the defendant contend, the rights of McWilliams are declared to be inferior to those of defendant. The board cannot be held to have intended an absurdity, and hence counsel's contention must be erroneous.

3. It is further contended that courts in this state have no jurisdiction to determine priority of water rights; that the Board of Control alone is vested with that power, and that if, accordingly, no adjudication of the relative priorities between plaintiff and defendant was made in 1917, the plaintiff should have applied to the board and not to the court to do so then. It is very doubtful that any one would have had the hardihood, during a number of years subsequent to the adoption of the Constitution, to make such contention. When

the Board of Control was created and organized it was confronted and beset with many difficulties. Few adjudications of priorities had been made by the courts. A great deal of work confronted the board. Surveys had to be made. A good deal of time was consumed therein. The cost thereof was great. The legislature in some instances made but limited appropriations, so that a number of years elapsed before the Board of Control was able to make even a small percentage of adjudications necessary, or advisable to be made. In view of these facts, many appropriators might often have been substantially remediless, if the contention now made by counsel for the defendant is correct, for if courts have no jurisdiction to determine disputes as to water rights now, they had none in the years immediately following the adoption of the Constitution. Counsel contend that the statutes of this state, rightly construed, provide for exclusive jurisdiction to make such adjudications. Conceding for the moment the power of the legislature to give such exclusive jurisdiction to the board—which would be inconsistent with the holding in Farm Investment Company v. Carpenter, 9 Wyo. 110—we know of no provision to that effect. Counsel think they find it in the fact that, while the adjudications made by the board are subject to the review in the courts, the review is limited to a review of the record made before the board and that no provision is made for taking evidence before the court. Counsel are in error. Section 122-123, Rev. St. 1931, provides:

"All proceedings on appeal shall be conducted according to the provisions of the civil code of procedure and the practice of appeals from the district courts of this state to the Supreme Court, provided that the practice on appeal in the district court as to pleadings necessary to be filed and the admission of evidence upon the trial shall be the same as is now or may hereafter be pro-

vided for by law regulating appeals from the justice court."

This statute by its own and direct terms contemplates that when an appeal is taken from the State Board of Control to the district court, evidence may be taken in the hearing on appeal. It further provides that an appeal to the district court in such case shall follow the provisions regulating appeals from justice court. Section 62-1205, Rev. St. 1931 provides that when an appeal is taken from a justice court to the district court the trial in the latter case shall be de novo, in which case, of course, evidence may be introduced by either party.

Counsel further believe that Section 2 of Article 8 of the Constitution vests the exclusive power of adjudication of priorities of water rights in the Board of Control. That section reads as follows:

"There shall be constituted a Board of Control, which shall be composed of the State Engineer and superintendents of the water divisions, which shall under such regulations as may be prescribed by law have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith, its decisions being subject to review by the courts of this state."

It may be noted that this section makes no provision for any such exclusive power in the Board of Control as is contended for by counsel for the defendant. In fact, there is no express provision that the State Board of Control may make any adjudication of water rights at all. However, under the decision in Farm Investment Company v. Carpenter, supra, the right to do so is implied, and is incident to the power of supervision. But that right is not, necessarily at least, exclusive. Section 1 of Article 5 of the Constitution provides, among other things, that the judicial power of the state is vested in the Supreme Court and the district

courts of this state. Section 1 of Article 2 provides that the powers of the government of the state are divided into three distinct departments, the legislative, the executive and the judicial, and that the power belonging to one of these departments shall not be exercised by any other, except as in the Constitution expressly directed or permitted. The Board of Control of this state is primarily an administrative body, exercising part of the executive power of the state. Even though the last part of the section last mentioned might possibly be construed as permitting the board to exercise judicial power in adjudicating water rights, there is nothing to indicate that the power of the courts has been superseded. It seems to be universally recognized that a suit may be brought in the courts to quiet title to a water course or to the rights of appropriators therein, or to determine priorities. 67 C. J. 1053, 1054. A like contention as in the case at bar was made in several cases in other jurisdictions, but has always been overruled.

In Hawaii the legislature provided for commissioners to hear and determine all controversies respecting rights of way and rights of water between private individuals and between private individuals and the government, but the court held in several cases that this did not deprive the courts of general jurisdiction to hear such controversies. Wailuku Sugar Co. v. Cornwell, 10 Hawaii 476, 13 Hawaii 195, 14 Hawaii 560; McBride Sugar Co. v. Koloa Sugar Co., 19 Hawaii 106; Territory v. Gay, 32 Hawaii 404. It must be remembered that in Hawaii no constitutional provision, so far as we are aware, granting all judicial power to the courts, exists, so that this fact must be taken into consideration in construing the language of the courts used in reference to the points now under discussion. In Territory v. Gay, supra, the court said:

"It is now too well established to admit of argu-

ment that these legislative grants of power to commissioners of water rights did not deprive courts of equity of such jurisdiction as they theretofore possessed concerning the same subject-matter and that courts of equity, before the creation of these special tribunals, had and now have jurisdiction to grant injunctions to restrain illegal diversions of water. In Wailuku Sugar Co. v. Cornwell, 10 Haw. 476, 477, 479, this court said, in 1896: "There must be an explicit expression of the intention of the legislature to make the jurisdiction exclusive. We do not find any such intention in the water rights commission statute. It is affirmative only and does not destroy the jurisdiction in equity. * * * The jurisdiction in equity, in a proper case for equity, exists concurrently with the jurisdiction of the commissioners where controversies respecting water rights are involved. Equity has frequently been resorted to to settle controversies respecting water rights and the jurisdiction has never heretofore been questioned."

The principle involved in the case at bar was, we think, involved in the case of Kerr v. Burns, 42 Colo. 285, 93 Pac. 1120. It appears in that case that there was a statute of Colorado providing for the adjudication of the waters by districts. In April, 1897, a proceeding had been brought for the adjudication of the water rights on only one creek, namely, Hermosa Creek, and not embracing all of the waters in the district. It was contended that in view of the statute the district court, in adjudging the rights on one particular creek, was without jurisdiction. The court said:

"Counsel urges the view that since the adoption of statutes dividing the state into water districts, and providing for the adjudication of water priorities in those districts, no such proceeding as the one under consideration could take place; that water priorities must be determined for the entire district or not at all, there being no authority for adjudicating the same 'piecemeal'; and, therefore, that the court in said Hermosa creek proceeding had no jurisdiction over the subject-matter. * * * By article 6, § 11, Const., the district court is given jurisdiction of all causes both at

law and in equity. This jurisdiction is amply broad enough to cover the determination of questions relating to priorities in the appropriation of water from the public streams of the state. The statutes referred to by counsel were adopted for the purpose of enabling parties to adjudicate in one proceeding all such priorities throughout a prescribed district covering, so far as possible, a single natural stream with its tributaries. They do not enlarge or limit the constitutional jurisdiction of the district court in this respect. They simply designate that court as the exclusive tribunal for the trial of such proceedings. * * * The district court of La Plata county, therefore, had jurisdiction over the subject-matter involved in the adjudication and decree of 1897."

In the case of Nye v. Bacon, (Utah) 18 P. (2d) 289, it appears that on April 16, 1925, the plaintiff Nye brought an action against one Johnson, the defendant in that action, to determine certain water rights. The court in that action adjudged and decreed that the waters in question and in which defendant claimed an interest were not public waters, but were private waters owned and possessed by the plaintiff, and that Johnson had no right, title or interest therein, and that the defendant be enjoined from interfering with the use of the waters by the plaintiff. The defendant Johnson attempted to evade the effect of the judgment so rendered and filed an application in the office of the State Engineer for the appropriation of the water which had been thus adjudicated, and the State Engineer allowed the application on April 20, 1928. The plaintiff thereupon brought an action in the nature of an appeal from the action of the State Engineer, setting forth the facts above mentioned. The defendant Johnson claimed that it was within the exclusive province of the State Engineer to determine the rights in reference to the waters in question and the State Engineer also claimed that he was not a party to the action which had thus been brought and that it was not

binding upon him. The trial court held otherwise. The defendant Johnson, however, appealed. The Supreme Court of Utah, speaking of the effect of the judgment of April 16, 1925, stated as follows:

"In assailing the judgment or decree so rendered, it, in substance, is contended by Johnson, the only appellant, that it was within the exclusive province of the state engineer to determine whether the waters in question were or were not public waters and that the district court 'was without jurisdiction to hear or determine whether or not the waters involved were public or private waters.' * * * By a court of competent jurisdiction, that question in the prior proceeding as alleged and admitted was determined in favor of the plaintiffs and against the defendant Johnson. That judgment being final and unappealed from was not only binding on the parties, but also on the state engineer. He had no authority to disregard it. On the contrary he was, as were the parties thereto, bound to respect it, and, when a certified copy of the findings and of the decree was served upon him, it was his duty to rule and act accordingly. He disobeyed it because, as he averred, he was not a party to the proceedings, and for that reason the prior decree was not binding on him. He had no right to do that."

And this court has in several cases followed the principle laid down in the cases already cited. Thus, in Farm Investment Company v. Carpenter, supra, this court stated a rule entirely at variance with the contention now made by counsel for the defendant. The rule of that case was quoted from and approved in Van Buskirk v. Live Stock Company, 24 Wyo. 183, 156 Pac. 1122. In Wyoming Hereford Ranch v. Hammond Packing Co., 33 Wyo. 14, 236 Pac. 764, it was held that the courts of this state have jurisdiction to determine the question of an abandonment of a water right where it has not been previously litigated and becomes an issue in an action in the courts, and it may be noted in that connection that the statutes of this state make special provision for a proceeding for abandonment of

a water right before the State Board of Control. And finally, in Laramie Irrigation & Power Co. v. Grant, 44 Wyo. 392, 423, 13 P. (2d) 235, this court assumed that as a matter of course an adjudication of water rights might be had in the courts of this state in the proper proceeding. In Farm Investment Company v. Carpenter, supra, the court said:

"The district court is by the constitution vested with original jurisdiction both at law and in equity. The jurisdiction of equity to entertain suits for quieting title to the use of the water is well settled. The legislature has not attempted to divest the courts of that jurisdiction, and we do not think it could successfully do so. Although in the statutory procedure for the determination of water rights the courts obtain jurisdiction only by way of appeal from the decisions of the Board of Control, all the ordinary remedies known to the law appurtenant to the use and appropriation of water are open to all interested in such rights equally with all other persons in respect to any other kind of right or property. The courts possess ample jurisdiction to redress grievances growing out of conflicting interests in the use of the public waters and to afford appropriate relief in such cases. Nothing can be plainer, it seems to us, than that in the absence of a previous determination by the board or in the courts of the priorities or rights of claimants upon a particular stream an interested party may resort to the courts to obtain such relief as he may show himself to be entitled to. The jurisdiction of the court remains as ample and complete after as well as before an adjudication by the board. But the principle applies here as in other cases, that a party may not re-litigate a question which has passed into final adjudication."

The language here used is so clear and explicit, and is so complete an answer to the contention of counsel for the defendant, that we do not know how to add to the force of it. The contention, accordingly, must be overruled.

4. It is further contended that the only remedy of

the plaintiff in this case was to appeal from the decision of the water commissioner to the State Engineer. In the instant case, the State Engineer had directed the water commissioner to recognize the defendant's right as superior, and it is readily seen that an appeal to him would have been substantially useless. The contention now made was made in the case of Ryan v. Tutty, 13 Wyo. 122, 78 Pac. 661, and the point was decided adversely to the defendant herein. The case, we think, is directly in point. The same point also arose in Van Buskirk v. Live Stock Co., supra, was discussed at length, and the decision of the court was contrary to the contention now made by the defendant. We are not disposed to overrule these cases and believe the rule therein announced to be sound. See also Mays v. District Court, 34 Ida. 200, 200 Pac. 115; Sarrett v. Hunter, 32 Ida. 536, 185 Pac. 1072. These and other cases define at length the power of the water commissioner. He cannot determine any priority. He must follow the priorities already legally determined, and while, perhaps, it might not have been improper to have joined him as party defendant in this case (67 C. J. 1056), he was certainly not a necessary party herein.

5. Counsel also contend that this action is barred by reason of the fact that it was not brought within ten years after the adjudication was made by the Board of Control. This evidently is upon the theory that the board determined that defendant's rights to the waters of Worth Creek are superior to those of the plaintiff. Inasmuch as we have already held that this is not true, the contention necessarily falls.

The judgment of the district court must, accordingly, be affirmed, and it is so ordered.

*Affirmed.*

RINER and KIMBALL, JJ., concur.