**Charles LOUTH, Appellant,**
**(Defendant below),**

**v.**

**C. E. KASER, Appellee, (Plaintiff below).**

**No. 2992.**

Supreme Court of Wyoming.

Aug. 22, 1961.

James A. Greenwood, Cheyenne, for appellant.

Henderson & Godfrey, Paul B. Godfrey, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

The appellee here, plaintiff below, sought to enjoin defendant-appellant from preventing plaintiff's coming upon defendant's land for the purpose of maintaining and repairing what is known as the Gilland Ditch and to clean out and repair the headgate to that ditch on Lodge Pole Creek.

Plaintiff had a water right adjudicated by the State Board of Control for 3.50 cubic feet of water per second of time to be used for the irrigation of 245 acres of his lands. The waters were diverted from Lodge Pole Creek at a point on defendant's lands and were carried across a portion of defendant's lands through the Gilland Ditch for use upon the plaintiff's lands.

After defendant's answer had controverted several of plaintiff's material allegations, a hearing, held July 14, 1959, on the application for temporary injunction, resulted in the parties consenting that in lieu of granting or denying plaintiff's application, the court might enter such an order as in its judgment would protect the personal and property rights of the parties from any recurrence "of the conditions complained of."

The court thereupon ordered:

"That Plaintiff may enter upon the land of defendant * * * for the purpose of constructing and installing a headgate and diversion works to enable plaintiff to divert at all times from the natural channel of Lodge Pole Creek the full amount of water lawfully entitled to be diverted under Permit No. 5703 adjudicated by the State Board of Control in the name of John Gilland with priority of September 23, 1903, for 3.50 c.f.s. to be used for irrigation of the 245 acres of land for which said permit was granted and said water right adjudicated, and for the further purpose of installing a measuring weir in the John Gilland Ditch to be used to measure the quantity of water being diverted at all times from Lodge Pole Creek into said John Gilland Ditch and for the further purpose of repairing and placing in a usable condition the John Gilland Ditch."

The court's order further provided that the location of the authorized installations should be made

"* * * under the specific directions, specifications and authorization of a duly licensed civil engineer qualified to pursue his profession in the State of Wyoming, to be appointed by the Court, and that said construction, location and installation of said headgate and weir be approved by the State Engineer of the State of Wyoming and plaintiff shall not make or attempt to make any diversion of water into John Gilland Ditch until said work herein provided has been performed at plaintiff's expense."

After directing where the installation should be made, the court ordered:

"* * * that the John Gilland Ditch shall be repaired and reconstructed on the original Ditch line from the original point of diversion across defendant's land * * * in such a manner as to provide for the conveyance of the full amount of water that can be lawfully diverted from Lodge ' Pole Creek under said John Gilland adjudicated appropriation, through said Ditch on a grade to be established by said civil engineer; that the plaintiff be and hereby is authorized to enter upon defendant's said lands for that purpose and in the future to maintain and repair said ditch along a right of way to be established at the final hearing after consideration of recommendations of the civil engineer and other evidence which may be adduced."

The court then ordered the plaintiff to "at all times maintain said John Gilland Ditch in a proper state of repair to permit efficient use thereof and so as to not in any way interfere with defendant's proper use of his lands adjacent to said Ditch," and concluded by stating that the order should not affect any claim of damages either party might have against the other and that the order might be modified by the court to conform with evidence adduced at the final hearing.

On February 25, 1960, the court permitted defendant to amend a portion of his answer. The material averments of this amendment were: That the John Gilland Ditch had never conveyed from Lodge Pole Creek water in excess of 1.50 cubic feet per second of time; that 97 acres of the land for which plaintiff's appropriation was adjudicated had never been irrigated by diversion of water from Lodge Pole Creek under the John Gilland Ditch; that the John Gilland Ditch adjudicated water right had been abandoned for more than

fifty years last past to the extent of 97 acres; that not in excess of 148 acres of land described in the plaintiff's Certificate of Appropriation had ever been irrigated under the John Gilland Ditch water right; that for more than five years last past and immediately prior to November 14, 1958, the date the suit was filed, the plaintiff had not diverted any water from Lodge Pole. Creek under the John Gilland Ditch appropriation and applied the same to beneficial use in the irrigation of any land; and that the John Gilland Ditch water right had been abandoned since 1952.

After more than eight months from the date of the original hearing on the application for temporary injunction, a final hearing was had. At the outset of this hearing, the court ruled the matter then in issue was "the repair and reconstruction of the ditch on the basis of the water right which is now operative because it never has been abandoned, that is, of the old water right and its provisions." The court also stated, "Any testimony on that, how this ditch should be constructed, with that in mind I will receive. But as to the question of abandonment or reduction in the acreage to be irrigated through this ditch I think that is a matter for another proceeding."

After some discussion with the court, appellant's counsel stated:

"I guess we have come to an understanding. I might want to be sure about that but the Court in this hearing at this time, Court considers it wholly immaterial and not germane to the issue to be determined to show that the ditch hasn't been used and that water hasn't been diverted from Lodge Pole Creek and used beneficially on the Kaser lands in more than ten consecutive last past years."

The court replied: "Under the pleadings and agreements here, yes."

Apparently appellant feels it was error for the court to so limit the evidence to be given at the final hearing, as it denied defendant any opportunity to prove his amending allegations that there had been an abandonment of a portion, or possibly the whole, of plaintiff's water right.

█ It seems clear that if plaintiff possessed the right to divert any amount of water at a point on defendant's lands and transport the same through a ditch upon defendant's lands, plaintiff was entitled to the injunctive relief sought by him, and any interference with plaintiff's entry upon defendant's lands for maintenance and repair of those facilities necessary for the enjoyment of his right is indefensible. The abandonment of only a portion of plaintiff's water right would not preclude plaintiff from the relief prayed in his complaint. However, defendant's amendment alleges that for more than five years immediately preceding the commencement of the action, no water was diverted from Lodge Pole Creek and applied to beneficial use upon plaintiff's lands. This brings us squarely to the question: May an unadjudicated claim of abandonment of an existing water right be interposed as a defense to an action for injunction by proof of nonuse so as to establish an abandonment by plaintiff of his water right, or are the provisions of §§ 41–47 through 41–53, W.S.1957, providing a procedure for a declaration of abandonment of water rights, exclusive of such a method of determining that there has been an abandonment of the water right?

The applicable portion of § 41–47, W.S. 1957, says:

"* * * in case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for irrigation or other beneficial purposes during any five successive years, they shall be considered as having abandoned the same, and shall forfeit all water rights, easements and privileges, appurtenant thereto, * *."

Section 41–48, W.S.1957, provides that any water user who might be affected by a declaration of abandonment who desires to bring about *a legal declaration* of such abandonment shall present his case by petition in writing to the Board of Control.

Section 41–49, W.S.1957, deals with notices to be given and the hearing to be held upon the petition.

Sections 41–50, 41–51 and 41–52, W.S. 1957, prescribe the procedures, orders and cost assessments which may result therefrom, and § 41–53, W.S.1957, makes provision for appeal with trial de novo in the district court in cases where the State Board of Control declares a water right to be abandoned.

Our research discloses that this subject has been touched upon and possibly decided by previous holdings of this court.

In April, 1900, Farm Investment Co. v. Carpenter, 9 Wyo. 110, 150, 61 P. 258, 269, 50 L.R.A. 747, 87 Am.St.Rep. 918, a suit to quiet plaintiff's title to the right to use water under an early appropriation, where the jurisdiction of the district court to determine the conflicting rights of the parties to the use of waters was at issue because of the statutory provisions for abandonment, the court said:

"* * * The legislature has not attempted to devest the courts of that jurisdiction, and we do not think it could successfully do so. Although in the statutory proceeding for the determination of water rights the courts obtain jurisdiction only by way of appeal from the decisions of the board of control, all the ordinary remedies known to the law, pertinent to the use and appropriation of water, are open to all interested in such rights, equally with all other persons in respect to any other kind of right or property. The courts possess ample jurisdiction to redress grievances growing out of conflicting interests in the use of the public waters, and to afford appropriate relief in such cases. Nothing can be plainer, it seems to us, than that, in the absence of a previous determination by the board or in the courts of the priorities or rights of claimants upon a particular stream, an interested party may resort to the courts to obtain such relief as he may show

himself to be entitled to. The jurisdiction of the courts remains as ample and complete after as well as before an adjudication by the board. But the principle applies here, as in other cases, that a party may not relitigate a question which has passed into final adjudication. * * *"

In Bamforth v. Ihmsen, 28 Wyo. 282, 313, 314, 204 P. 345, 355, 356, rehearing denied 28 Wyo. 282, 205 P. 1004, the administrator sought to quiet title to the deceased's interests in ditch and water rights. It was claimed that the deceased, during his lifetime, had abandoned his water and ditch rights. The court, after stating "The burden of showing abandonment is on the party who asserts it (1 C.J. 11), and the evidence on the subject should be clear" and noting "There is abundant evidence in the record to show the continuous use of Gardner [the deceased] of water for irrigation, although the record is not clear on the amount used nor the amount available," then concluded that it could not find there was error below and said, "Hence it is unnecessary to decide whether the statutory method for determination of abandonment is *exclusive* or not." (Emphasis supplied.)

In Wyoming Hereford Ranch v. Hammond Packing Co., 31 Wyo. 31, 222 P. 1027; 33 Wyo. 14, 26, 27, 236 P. 764, 767, which involved the right to the use of certain waters, it was contended that before a water right can be forfeited there must be proof not only of nonuser for the statutory period but also of a concurring intention to abandon the right, and that the statutory proceedings before the State Board of Control for declaration of abandonment of a water right was exclusive. The court there said, "Assuming that the statutes are constitutional, we think they were not intended to provide an exclusive remedy," and proceeded to quote with seeming approval Farm Investment Co. v. Carpenter, supra. In the same case, however, the court further stated:

"* * * If the statute of 1913 [relating to procedures before the Board for abandonment] is constitutional, and the question of abandonment is determined thereunder by the board of control, it having its jurisdiction properly invoked, no doubt its decision would be final, subject to the right of appeal. If, however, in an action of which the district court has jurisdiction, a question of abandonment, not previously litigated, becomes an issue, we think the court has jurisdiction to determine it. See, also, Van Buskirk v. Live Stock Company [Van Buskirk v. Red Buttes Land & Live Stock Co.], 24 Wyo. 183, 156 P. 1122, 160 P. 387."

The Van Buskirk case was one which held that the remedy provided by our statutes for regulation of headgates, reservoirs and ditches of water by commissioners is cumulative and not exclusive. It is obviously referred to as a precedent by analogy.

Although Van Tassel Real Estate & Live Stock Co. v. City of Cheyenne, 49 Wyo. 333, 54 P.2d 906, certiorari denied 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423, was cited in Horse Creek Conservation Dist. v. Lincoln Land Co., 50 Wyo. 229, 238, 59 P.2d 763, 765, to note the original act of 1913 was amended to require a review by the court of every declaration of abandonment made by the board, the Van Tassel case also recognized that a declaration of abandonment by the Board would forestall original action for abandonment in the courts if there was provision for court review of the Board's action. This seems to indicate the court in Van Tassel deemed the statutory remedy given by §§ 122–421 to 122–427, inclusive, R.S.1931 (now §§ 41–47 to 41–53, inclusive, W.S.1957) was merely cumulative and not exclusive.

In Horse Creek Conservation Dist. v. Lincoln Land Co., 50 Wyo. 229, 238, 59 P.2d 763, 765; Id., 54 Wyo. 320, 92 P.2d 572, the court said:

"* * * It may be noted in passing that in Wyoming Hereford Ranch v. Hammond Packing Company, 33 Wyo. 14, 27, 236 P. 764, in considering the contention that the act of 1913 provided an exclusive procedure for determining the question of abandonment of a water right, we said that in certain cases the decisions of the board of control would be final, 'subject to the right of appeal.' This statement was on a point not involved in that case, and we evidently failed to notice that section 6 of the original act of 1913, providing for appeals from the board's orders, had been amended by an act that requires a review of every declaration of abandonment. See Van Tassel, etc., Co. v. City of Cheyenne (Wyo.) [49 Wyo. 333] 54 P.(2d) 906, 912."

This observation does not, however, modify any former statement of the court relative to the statutory proceeding's being exclusive.

In Simmons v. Ramsbottom, 51 Wyo. 419, 436, 437, 68 P.2d 153, 159, quotations were made from the Wyoming Hereford Ranch case, supra, and the Farm Investment Company case, supra. The court also said:

"* * * In Wyoming Hereford Ranch v. Hammond Packing Co. * * * it was held that the courts of this state have jurisdiction to determine the question of an abandonment of a water right where it has not been previously litigated and becomes an issue in an action in the courts, and it may be noted in that connection that the statutes of this state make special provision for a proceeding for abandonment of a water right before the State Board of Control. * * *"

Again this statement does not modify or change the former pronouncement of the court. Reference was also made to Laramie Irrigation & Power Co. v. Grant, 44 Wyo. 392, 423, 13 P.2d 235, where this

court assumed, as a matter of course, that an adjudication of water rights might be had in the courts of this State in a proper proceeding, and quoted extensively from Farm Investment Company, supra, with apparent approval, stating that the quoted language was so clear and explicit as to be a complete answer to the contention that the statutory proceeding was exclusive.

In Laramie Rivers Co. v. Le Vasseur, 65 Wyo. 414, 450, 202 P.2d 680, 694, this court noted:

"  *   *   * We held in Simmons v. Ramsbottom, 51 Wyo. 419, 68 P.2d 153, that the right of the Board of Control to adjudicate water rights is not exclusive, but that such rights may be adjudicated by the courts in cases in which that has not been done by the Board of Control.  *   *   *"

This again, by analogy, accords with the other holdings of this court that the statutory proceedings for abandonment are not exclusive.

It may not be inappropriate that we recall that in Farm Investment Co. v. Carpenter, 9 Wyo. 110, 142, 143, 61 P. 258, 266, 267, 50 L.R.A. 747, 87 Am.St.Rep. 918, it was said:

"  *   *   * In the development of the irrigation problem under the rule of prior appropriation, perplexing questions are continually arising, of a technical and practical character. As between an investigation in the courts and by the board, it would seem that an administrative board, with experience and peculiar knowledge along this particular line, can, in the first instance, solve the questions involved, with due regard to private and public interests, conduct the requisite investigation, and make the ascertainment of individual rights, with greater facility, at less expense to interested parties, and with a larger degree of satisfaction to all concerned. In the opinion of an able law writer upon this subject, the powers of the board of control in this respect constitute one of the most praiseworthy features of our legislation. He says: 'In the state of Wyoming, at least, there will no longer be the ludicrous spectacle of learned judges solemnly decreeing the right to from two to ten times the amount of water flowing in a stream, or, in fact, amounts so great that the channel of the stream could not possibly carry them; thus practically leaving the questions at stake as unsettled as before.' Kin.Irr. § 493.  *   *   *"

In the Laramie Rivers Company case, supra, our present Chief Justice also makes somewhat similar observations as to the merit of having this type of proceeding initiated or first passed upon by the administrative agency best qualified in such matters, saying in 65 Wyo. at page 450, 202 P.2d at pages 694, 695:

"  *   *   * There is a board in Nebraska similar to the Board of Control in this state, and in the creation of which the legislature of Nebraska followed the Wyoming laws, as stated in the foregoing case. [Crawford Co. v. Hathaway, 67 Neb. 325, 93 N.W. 781, 60 L.R.A. 889, 108 Am.St.Rep. 647]. Weil on Water Rights, 3rd Ed., page 1106, refers to the foregoing case, and states that while it was held that courts have the right to adjudicate water rights, it was also held 'that it is within the discretion of the court to remand the parties to their remedies by application to the board.' See 93 N.W. 793. There is good reason for that. Irrigation matters frequently involve many technicalities in connection with which courts cannot be expected to be experts, while the members of the Board of Control supposedly are. Now, if the trial court would have had the right to ask the parties to go and have the matters of priorities first determined by the Board of Control, there would be no reason to hold that the parties may not themselves initiate proceedings before it,

at least in the absence of the court's objection, if, in the meantime, the action brought in court has not been finally determined, as is true in this case. In other words, we can find no good reason why the court may not avail itself of the aid which may be furnished by having a previous adjudication of the right made by the Board of Control, just as it might refer a case to a referee, and that is in substance the situation in this case."

The very fact that the value of bringing this type of question before the qualified administrative tribunal, rather than to bring it into initial litigation in the courts, was suggested by two very learned jurists at times more than a half century apart, cries aloud to the Legislature that within Constitutional limits the law be made more explicit as to the procedure to be followed.

■ A fair appraisal of these holdings of this court leaves little doubt but that it is the existing law of this State that the statutory proceedings of §§ 41–47 through 41–53, W.S.1957, are not exclusive of independent action in the courts of this State.

This being true, the abandonment of a water right upon which injunctive relief depends may properly be interposed in defense of the action for injunction. It follows, defendant having been allowed to amend his answer by alleging plaintiff had abandoned his entire water right by virtue of which the plaintiff's right to enter upon defendant's lands depended, it was error for the court to refuse to allow plaintiff to introduce proper evidence bearing upon the question of plaintiff's abandonment of his water right.

We find nothing in the order of July 14, 1959, which justifies the assumption that the court·was doing more than carrying out the agreement of the parties to give interim protection to both sides pending the ultimate disposition of the lawsuit upon its merits.

The judgment of the lower court must accordingly be reversed and the cause remanded for new trial with instruction that upon such retrial proper evidence bearing upon the question of abandonment of plaintiff's water right be received.

Reversed and remanded.